No. 24-1039

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
_____

**RUSSELL FOUTS, *et al*.,**

*Plaintiffs-Appellees*,

**v.**

**ROB BONTA, IN HIS OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF THE STATE OF CALIFORNIA,**

*Defendant-Appellant.*

_____

On Appeal from the United States District Court
for the Southern District of California
No. 3:19-cv-01662-BEN-JLB
(Hon. Roger T. Benitez)
_____

## BRIEF OF THE ASSOCIATION OF MATURE AMERICAN CITIZENS AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLEES AND AFFIRMANCE
_____

John Parker Sweeney
James W. Porter, III
W. Chadwick Lamar Jr.
Bradley Arant Boult Cummings LLP
1615 L Street N.W., Suite 1350
Washington, D.C. 20036
Phone: 202-719-8216
Facsimile: 202-719-8316
jsweeney@bradley.com

Counsel for *Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to FRAP 26.1, the Association for Mature American Citizens states that it is a nongovernmental corporation that has no parent corporation and that no publicly held corporation owns 10% or more of its stock.

Dated: June 13, 2024         */s/ John Parker Sweeney*
John Parker Sweeney

Counsel for *Amicus Curiae*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................iv

STATEMENT OF CONSENT ............................................................. viii

INTEREST OF *AMICUS CURIAE*..........................................................ix

INTRODUCTION ................................................................................1

BACKGROUND ..................................................................................3

SUMMARY OF THE ARGUMENT ......................................................7

ARGUMENT ....................................................................................11

I.   California's Billy Ban burdens conduct that is presumptively protected by the Second Amendment's plain text ............................11

II.  California failed to prove that the banned arms are not in common use for lawful purposes or uniquely dangerous, and it must prove both to justify the Billy Ban ...........................................13

    A.   The State bears the burden to prove that the arms at issue are dangerous and unusual ........................................................14

    B.   The State has not met its burden to prove that the arms at issue are uniquely dangerous and are not in common use .........17

III. California failed to prove that its Billy Ban is consistent with this Nation's historical tradition of arms regulation ...............................21

    A.   The ban fails under the "straightforward" analysis....................21

    B.   The ban fails under analogical reasoning...................................24

IV.  California's broadly and vaguely worded ban raises serious due process concerns and violates *Bruen*'s admonition against governmental discretion ..................................................................29

CONCLUSION ....................................................................................30

# TABLE OF AUTHORITIES

## Cases

*Atkinson v. Garland*,
   70 F.4th 1018 (7th Cir. 2023) ............................................................13

*Brown v. Davenport*,
   596 U.S. 118 (2022).............................................................................16

*Caetano v. Massachusetts*,
   577 U.S. 411 (2016)................................................... 8, 9, 12, 13, 14, 17, 20, 21

*Connecticut v. DeCiccio*,
   105 A.3d 165 (Conn. 2014) ............................................................12, 18

*District of Columbia v. Heller*,
   554 U.S. 570 (2008)........................................... 2, 7, 8, 11, 12, 14, 15, 16, 17, 21

*Espinoza v. Mont. Dep't of Revenue*,
   591 U.S. 464 (2020).......................................................................25, 26

*Friedman v. City of Highland Park*,
   136 S. Ct. 447 (2015) ........................................................................18

*Fyock v. Sunnyvale*,
   779 F.3d 991 (9th Cir. 2015) .................................................13, 17, 18

*Johnson v. United States*,
   576 U.S. 591 (2015)............................................................................29

*Konigsberg v. State Bar of Cal.*,
   336 U.S. 36 (1961)...............................................................................2

*Lara v. Comm'r Penn. State Police*,
   91 F.4th 122 (3d Cir. 2024) ...............................................................25

*Maloney v. Singas*,
   351 F. Supp. 3d 222 (E.D.N.Y. 2018) ...............................................12

*Maryland Shall Issue, Inc. v. Hogan*,
   86 F.4th 1038 (4th Cir. 2023) ......................................................26, 27

*McDonald v. City of Chicago*,
  561 U.S. 742 (2008) ................................................................25

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
  597 U.S. 1 (2022) .............................................................*passim*

*Oregon v. Kessler*,
  614 P.2d 94 (Or. 1980) ......................................................12, 18

*People v. Auten*,
  2011 WL 1648254 (Cal. App. May 3, 2011) ............................5

*People v. Baugh*,
  20 Cal.App.5th 438 (2018) ..................................1, 3, 4, 5, 18, 29

*People v. Canales*,
  12 Cal.App.2d 215 (1936) .......................................................1, 3

*People v. Davis*,
  214 Cal.App.4th 1322 (2013) ................................................5, 6

*People v. Deane*,
  259 Cal.App.2d 82 (1968) ........................................................4

*People v. Fannin*,
  91 Cal.App.4th 1399 (2001) .....................................................4

*People v. Grubb*,
  63 Cal.2d 614 (1965) ............................................................3, 5

*People v. Huynh*,
  229 Cal.Rptr.3d 385 (2018) .....................................................5

*People v. King*,
  38 Cal.4th 617 (2006) ..............................................................5

*People v. Leffler*,
  2018 WL 3974150 (Cal. App. Aug. 20, 2018) ..........................3

*People v. Twiford*,
  2018 WL 144560 (Cal. App. Mar. 23, 2018) ............................5

v

*People v. Vargas*,
    2001 WL 1215858 (Cal. App. Oct. 11, 2001) .......................................5

*People v. Villanueava*,
    2017 WL 999220 (Cal. App. Mar. 15, 2017) .....................................5

*Ramos v. Louisiana*,
    590 U.S. 83 (2020)...............................................................................25

*Teter v. Lopez*,
    76 F.4th 938 (9th Cir. 2023) ...................................14, 15, 25, 26, 28

*United States v. Alaniz*,
    69 F.4th 1124 (9th Cir. 2023) ............................................................16

*United States v. Duarte*,
    101 F.4th 657 (9th Cir. 2024) ...........................................13, 15, 16

*United States v. Perez-Garcia*,
    96 F.4th 1166 (9th Cir. 2024) ...........................................................16

**Statutes**

1837 Ga. Acts. 90, §§ 1, 4.................................................................28

1849 N.Y. Laws 403–404, ch. 278, §§ 1–2 ...................................28

1849 Vt. Acts & Resolves 26, No. 36, §§ 1–2.................................28

1866 N.Y. Rev. Stat. ch. 716, §§ 1–2, *reprinted in* Throop, Revised
    Statutes of the State of New York, Vol. 3, at 2512 (1882).................27

1868 Fla. Stat., ch. 1637, *reprinted in* Blount, *et al.*, Rev. Stats. of Fla.
    782–83, tit. 2, art. 5, § 2423 (1892). ...................................................27

1881 Ill. Laws 73, § 1 ......................................................................28

1917 Cal. Stat. 221, ch. 145, § 1 .......................................................3

Cal. Penal Code § 22210....................................................*passim*

## Other Authorities

Ben Miller, *A History of Cane Self-Defense in America: 1798-1930*, Martial Arts New York (Aug. 16, 2016) ............................................................22

*Boston Massacre*, History (last updated Aug. 11, 2023) ........................................23

California's Population Aged 65 Years and Older, Cal. Health Benefits Rev. Program (Nov. 2022) ......................................................................ix

Crimes Against Older Adults Fact Sheet, U.S. Dep't of Justice, Office for Victims of Crime (2018) ..............................................................................ix

Crime in California 2022, Cal. Dep't of Just. .........................................................ix

Eric Ruben, *Law of the Gun: Unrepresentative Cases and Distorted Doctrine*, 107 Iowa L. Rev. 173 (2021) ...............................................8, 12, 18

*From Cane to Weapon: Senior Citizens Fight Back with Cane Fu*, ABC News (Sept. 5, 2012) ...............................................................................19

Junior Ranger Program Handbook, Cal. State Parks (revised 2011) ......................19

Nancy M. Gell, *et al.*, *Mobility Device Use Among Older Adults and Incidence of Falls and Worry About Falling: Findings from the 2011–2012 National Health and Aging Trends Study*, 63 J. Am. Geriatrics Soc. 853 (2015) ..............................................................1, 9, 18

Raja Razek, et al., *First fatal mountain lion attack in California in 20 years leaves one man dead, brother injured, authorities say*, CNN (updated Mar. 24, 2024) .....................................................................................6

Ronan O'Connell, *Bataireach: The ancient Irish martial art making a comeback*, BBC (Oct. 17, 2022) .......................................................................22

Ryan Yamamoto, *Oakley seniors train with canes for self-defense*, CBS News (Nov. 29, 2023) ........................................................................6, 19

*The Caning of Charles Sumner*, United States Senate ...........................................23

## STATEMENT OF CONSENT

All parties have consented to the filing of this *amicus* brief pursuant to FRAP 29(a)(2). No party or party's counsel authored this brief in whole or in part. Nor has anyone other than *amicus curiae*, its members, or its counsel contributed money towards this brief.

**INTEREST OF *AMICUS CURIAE***

The Association of Mature American Citizens ("the Association") is a membership organization focused on the needs of America's older citizens 50 years of age and older and bringing the concerns of its two million members in a unified voice to the attention of government officials. The Association has over 140,000 members in the State of California. Roughly 15% of California's population is 65 or older, and that percentage is expected to grow.[1] The Association is committed to enriching the lives of all Americans and safeguarding Americans' constitutional rights, including the fundamental right to keep and bear arms, which is "necessary to the security of a free State." U.S. Const. amend II. The Association firmly believes, as America's Founders did, that the power of government to act is justly limited by the fundamental rights of the people, including the right to keep and bear arms for all lawful purposes such as self-defense.

Older Americans face "significant" threats of victimization.[2] In California in 2022, violent crimes against seniors numbered 16,575.[3] The Association's members

---

[1] California's Population Aged 65 Years and Older, Cal. Health Benefits Rev. Program (Nov. 2022) [link].

[2] Crimes Against Older Adults Fact Sheet, U.S. Dep't of Justice, Office for Victims of Crime (2018) [link].

[3] Crime in California 2022, Cal. Dep't of Just. [link].

seek to possess non-lethal arms, including ordinary objects commonly possessed for lawful purposes like canes and walking sticks, and to use them in self-defense should the need arise without fear of prosecution under the vaguely worded and limitlessly broad California statute at issue. Whether California's ban on the possession of "any instrument or weapon of the kind commonly known as a billy" violates the Second Amendment is of tremendous significance to the Association and its members. The Association submits this brief in support of the district court's judgment enjoining enforcement of California's "Billy Ban."

## INTRODUCTION

Every day, many ordinary older citizens choose to take a cane or walking stick when leaving home. In California, these individuals risk becoming felons because the State criminalizes the possession of "any instrument or weapon of the kind commonly known as a billy." Cal. Penal Code § 22210. Although the term "billy" most naturally refers to a club or baton, such as those carried by police officers, California's categorical Billy Ban sweeps much further: it criminalizes the possession of any "ordinary" and "innocent" blunt instrument that a citizen would use for "self-defense" "if the need arose." *People v. Baugh*, 20 Cal.App.5th 438, 443–46 (2018) (affirming conviction based on possession of a baseball bat for self-defense). Just as it criminalizes the possession of a baseball bat for self-defense, *id.*, California's Billy Ban also appears to criminalize an older American's possession of a cane, walking stick, or any other ordinary blunt object that they would use to defend themselves "if the need arose." *Id.* at 446. The ban's implications cannot be understated: nearly six million Americans use a cane for mobility,[4] which California's "purposely broad" statute criminalizes if the citizen has self-defense in mind. *People v. Canales*, 12 Cal.App.2d 215, 217 (1936). Many older Americans

---

[4] Nancy M. Gell, *et al.*, *Mobility Device Use Among Older Adults and Incidence of Falls and Worry About Falling: Findings from the 2011–2012 National Health and Aging Trends Study*, 63 J. Am. Geriatrics Soc. 853, 855 (2015).

1

cannot even leave their homes without the assistance of a cane and, under California's Billy Ban, cannot raise it to fend off an unleashed dog or attacker on the street without risking criminal prosecution.

California's vaguely worded and limitlessly broad Billy Ban is an "outlier[] that our ancestors would never have accepted." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 30 (2022) (citation omitted). It violates "the Second Amendment's 'unqualified command,'" *id.* at 17 (quoting *Konigsberg v. State Bar of Cal.*, 336 U.S. 36, 50 n.10 (1961)), and the preexisting "inherent" and "natural right of resistance and self-preservation" which entitles citizens to armed self-defense, *District of Columbia v. Heller*, 554 U.S. 570, 594, 628 (2008).

2

## BACKGROUND

Since 1917, the State of California has prohibited the possession of "any instrument or weapon of the kind commonly known as a billy." Cal. Penal Code § 22210 (current codification); *see* 1917 Cal. Stat. 221, ch. 145, § 1 (original language). Although "billy," in isolation, refers to a club or baton, *People v. Leffler*, 2018 WL 3974150, at *2 (Cal. App. Aug. 20, 2018), California's exceedingly and "purposely broad" statute reaches much further than clubs and batons. *Canales*, 12 Cal.App.2d at 217. California has identified no other state in the Union with such a statute on its law books, demonstrating that it truly is an outlier.

The limitless breadth of the ban stems from its inclusion of any instrument "**of the kind** commonly known as a billy." Cal. Penal Code § 22210 (emphasis added). California's Billy Ban criminalizes the possession of "an instrument with ordinary innocent uses" so long as "the object was possessed *as a weapon*." *Baugh*, 20 Cal.App.5th at 444. That includes possessing the instrument for "self-defense" in the event that "the need arose." *Id.* at 444, 446 (holding that a bat the defendant "would" use "as a weapon . . . if the need arose" supported conviction); *People v. Grubb*, 63 Cal.2d 614, 617–18 (1965) (holding that possession for "self-defense" and previous use as a weapon satisfied "the very elements that convert[ed] the broken bat otherwise usable for peaceful purposes into the kind of instrument proscribed by the

statute"), *superseded on other grounds by statute*. These precedents make clear that the possession of virtually any object that "may be used as an 'impact weapon'" and is possessed for "self-defense" is outlawed by California's Billy Ban. *Baugh*, 20 Cal.App.5th at 444, 447. Criminal intent is satisfied if the possessor "felt the need for a weapon and had a willingness to use it." *Id.* at 446.

California's courts have not addressed whether possession for concurrent purposes is criminal—such as having a cane for both mobility and self-defense. But caselaw suggests that even the partial purpose of self-defense is criminal, because a defendant claiming "innocent" use must prove that he possessed the object "for the purposes served by [the object's] legitimate design **instead of** those proscribed by [the ban]." *People v. Fannin*, 91 Cal.App.4th 1399, 1406 (2001) (affirming finding that bicycle lock was a slungshot) (emphasis added). The possessor need only have "contemplated the unlawful and not the lawful use" "at the time and place of the alleged illegal possession." *Id.* at 1404 (quoting *People v. Deane*, 259 Cal.App.2d 82, 89 (1968), *superseded by statute*). The Billy Ban criminalizes possession of virtually any "ordinary" and "innocent" blunt instrument if possessed with even the momentary contemplation of "self-defense." *Id.*; *Baugh*, 20 Cal.App.5th at 443–46.

The California Supreme Court has repeatedly said that "a baseball bat or a table leg, each of which unquestionably has lawful, utilitarian purposes, may

nevertheless constitute a 'billy.'" *People v. King*, 38 Cal.4th 617, 626 (2006); *Grubb*, 63 Cal. 2d at 621 (contrasting "possession of a table leg . . . carried at night in a 'tough' neighborhood to the scene of a riot" with a "Little Leaguer at bat in a baseball game"). The statute places citizens at the mercies of prosecutorial discretion and arbitrary interpretation. *Grubb* held that the statute reached a small baseball bat with its handle broken and taped. 63 Cal.2d at 620–21. Intermediate courts have affirmed convictions based on ordinary objects like "a small wooden bat," *Baugh*, 20 Cal.App.5th at 448–49, a "longer" bat modified with a wrist strap and holes, *People v. Davis*, 214 Cal.App.4th 1322, 1328–29 (2013), "a 10- to 11-inch wooden table leg or a stool leg with a string or lanyard tied around it for a handle," *People v. Auten*, 2011 WL 1648254, at *2, *4 (Cal. App. May 3, 2011), a "mini sledgehammer," *People v. Huynh*, 229 Cal.Rptr.3d 385, 405 (2018) (ordered not published), a tire iron, *People v. Villanueva*, 2017 WL 999220, at *2–3 & n.3 (Cal. App. Mar. 15, 2017), "a three-foot long metal pipe," *People v. Vargas*, 2001 WL 1215858, at *3 (Cal. App. Oct. 11, 2001), and "a 14-inch piece of rebar" that was "modified to have a handle," *People v. Twiford*, 2018 WL 1444560, at *1 (Cal. App. Mar. 23, 2018). The statute lacks any limiting principle. The object need not be "physically altered from its original form to enhance its utility as a weapon." *Baugh*, 20 Cal. App. 5th at 446. Nor must it be "concealable." *Davis*, 214 Cal. App. 4th at 1328.

5

The Billy Ban criminalizes the possession of canes, walking sticks, or other ordinary-yet-blunt instruments that a law-abiding citizen might keep and use for everyday purposes if she has self-defense in mind. That would include an older American walking down the street with a cane,[5] a hiker with a walking stick worried about assault or even attack by a wild animal,[6] someone who picks up a stick on the ground to defend from attack, and virtually any other possession of a blunt instrument for the partial purposes of self-defense. The logical extension of the Billy Ban is that the State of California does not want citizens to own anything that could be used as a weapon of self-defense. The only limitation on the reach of the ban is prosecutorial discretion, but the Supreme Court has already held that the Second Amendment is not satisfied by handing "open-ended discretion" to state law-enforcement officials. *Bruen*, 597 U.S. at 79 (Kavanaugh, J., concurring).

---

[5] Ryan Yamamoto, *Oakley seniors train with canes for self-defense*, CBS News (Nov. 29, 2023) [link].

[6] Raja Razek, *et al.*, *First fatal mountain lion attack in California in 20 years leaves one man dead, brother injured, authorities say*, CNN (updated Mar. 24, 2024) [link].

## SUMMARY OF THE ARGUMENT

"[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct"; thus, a law burdening protected conduct is unconstitutional unless the government "demonstrate[s] that the regulation is consistent with this Nation's historical tradition of [arms] regulation." *Bruen*, 597 U.S. at 17. *Bruen*'s application here is straightforward: the plain text of the Second Amendment covers law-abiding citizens' possession of blunt instruments prohibited by California's Billy Ban, and the State has not met its burden to "affirmatively prove" that an "enduring," "well-established," and "comparable tradition of regulation," *id.* at 19, 27, 30, 67, supports the State's categorical and limitless ban on the possession of "any instrument or weapon of the kind commonly known as a billy." Cal. Penal Code § 22210. The Court should affirm the judgment of the district court striking down the Billy Ban.

California's Billy Ban burdens conduct presumptively protected by the Second Amendment because it prohibits all Americans from possessing—keeping and bearing—protected "Arms" for self-defense. The Second Amendment's text presumptively covers "all instruments that constitute bearable arms," *Heller*, 554 U.S. at 582, which includes any "instruments that facilitate armed self-defense," *Bruen*, 597 U.S. at 28. Sticks and other blunt impact weapons undoubtedly satisfy

7

that standard; they are the "simplest and oldest weapon[s]." Eric Ruben, *Law of the Gun: Unrepresentative Cases and Distorted Doctrine*, 107 Iowa L. Rev. 173, 192 (2021). California's Billy Ban is unconstitutional unless the State proves a justifying historical tradition.

In an effort to avoid "shoulder[ing] the burden" of demonstrating historical tradition, *Bruen*, 597 U.S. at 45 n.11, the State contends that the ban is constitutional because the Plaintiffs failed to prove that the arms at issue are "in common use." State.Br.22–27. Not so. The Nation's "historical tradition" conclusively protects arms "in common use" for lawful purposes, just as "historical tradition" might permit banning arms that are "dangerous and unusual." *Bruen*, 597 U.S. at 47; *Caetano v. Massachusetts*, 577 U.S. 411, 411–12 (2016); *Heller*, 554 U.S. at 627. The history-based burden falls on the State to prove that the arm is "*both* dangerous *and* unusual." *Caetano*, 577 U.S. at 417 (Alito, J., concurring). The State has not met either part of its conjunctive burden here. There is abundant support for the conclusion that the instruments California bans—batons, clubs, canes, sticks, and other everyday objects—are in common use for lawful purposes including self-defense. Conversely, there is no support for the State's position that such objects are uniquely dangerous; to the contrary, these non-lethal arms are patently less dangerous than many other protected arms including firearms. Canes and walking

8

sticks, often prescribed by physicians, ubiquitously serve citizens other ways like reducing fall risks and increasing mobility.[7] The State has not proven unique dangerousness and lack of common use, and that failure renders California's outright ban unconstitutional. *Id.* at 420.

The State fails to "affirmatively prove" a sufficient "tradition of regulation" that justifies categorically banning virtually all blunt instruments. *Bruen*, 597 U.S. at 19, 27. The historical record yields a rich tradition of using blunt objects, like canes, for defensive purposes, and it demonstrates that violence involving blunt objects is as old as civilization itself. Yet the State identified no historical laws banning the class of arms at issue, which is dispositive under *Bruen*'s "straightforward historical inquiry." *Id.* at 26–27. Even if analogical reasoning were appropriate here, which it is not, the State has not identified any "relevantly similar" tradition. *Id.* at 29. The State's evidence demonstrates only insufficient "restrictions governing the intent for which one could carry arms, the manner of carry, or the exceptional circumstances under which one could not carry arms," *id.* at 38, and a few bans of weapons not remotely analogous to canes and sticks. None of the State's evidence sets forth a non-theoretical and comparable tradition of regulation. The

---

[7] Gell, *supra* note 4, at 853.

State thus fails to meet its burden to prove the constitutionality of its law banning virtually every blunt object merely because it is possessed with self-defense in mind.

There are countless reasons why law-abiding citizens would opt to use non-lethal impact weapons to defend themselves; and, especially in California where firearms are severely restricted, resorting to everyday instruments like canes and walking sticks might be an older citizen's only option. California violates the Constitution by criminalizing possession of common objects like canes and sticks. The district court's judgment should be affirmed.

## ARGUMENT

California's Billy Ban is unconstitutional. The Second Amendment's plain text covers the possession of the blunt instruments prohibited by California's ban, and the State has failed to meet its burden to prove a justifying historical tradition. The Court should affirm the district court's judgment.

## I. California's Billy Ban burdens conduct that is presumptively protected by the Second Amendment's plain text.

The Second Amendment's text provides a clear command: "the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. California's banning the possession of "any instrument of the kind commonly known as a billy" burdens protected conduct because it prohibits all citizens (the people) from acquiring, possessing, and carrying (keeping and bearing) virtually any blunt impact weapon, including ordinary objects such as canes and walking sticks, for the purposes of self-defense (arms).

The Supreme Court has confirmed that all instruments covered by California's ban are presumptively protected "Arms." *Heller* held, and *Bruen* reaffirmed, that "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms." *Bruen*, 597 U.S. at 28 (quoting *Heller*, 554 U.S. at 582). That includes all "instruments that facilitate armed self-defense," *id.* at 28, or instruments possessed "for offensive or defensive action," *id.* at 32, or "any thing that a man . . .

11

takes into his hands, or useth in wrath to cast at or strike another," *Heller*, 554 U.S. at 581. As the State's experts concede, "sticks have always served as weapons," 5-ER-768, and "blunt weapons" have taken on "countless variations," 5-ER-817. What was true historically remains true today: "The simplest and oldest weapon, meanwhile, is the impact weapon," and "more Americans undoubtedly possess blunt force instruments than guns." Ruben, *supra*, 107 Iowa L. Rev. at 192, 209. In every application, the instruments covered by California's Billy Ban are presumptively protected arms. Any limitation on that protection must come from "historical justification[]." *Heller*, 554 U.S. at 635.

That the instruments at issue are non-lethal does not diminish their textually protected nature. Several courts have held that non-lethal blunt instruments are protected, including billy clubs. *Maloney v. Singas*, 351 F. Supp. 3d 222, 238 (E.D.N.Y. 2018) (nunchucks); *Connecticut v. DeCiccio*, 105 A.3d 165, 198 (Conn. 2014) (batons); *Oregon v. Kessler*, 614 P.2d 94, 100 (Or. 1980) (billy clubs under state analogue). The Supreme Court's decision in *Caetano*, which summarily reversed a Massachusetts court's holding "that the Second Amendment does not extend to stun guns," provides further confirmation. 577 U.S. at 411–12. If that were not enough, in *Caetano*, the author of *McDonald* was joined by the author of *Bruen*

12

in concluding that stun guns are protected "weapons" and banning them "violate[d] the Second Amendment." *Id.* at 420 (Alito, J., joined by Thomas, J., concurring).

Because "the Second Amendment's 'plain text' covers the regulated conduct, the government has only one way to defend the regulation—by proving that it is 'consistent with this Nation's historical tradition of firearm regulation.'" *Atkinson v. Garland*, 70 F.4th 1018, 1020 (7th Cir. 2023); *United States v. Duarte*, 101 F.4th 657, 668 (9th Cir. 2024) (similar).

## II. California failed to prove that the banned arms are not in common use for lawful purposes or uniquely dangerous, and it must prove both to justify the Billy Ban.

To avoid facing its historical burden, the State contends that the "plaintiffs' claim fails at the threshold stage" because the Plaintiffs did not prove "common use." State.Br.18, 22–27. It also contends that these instruments are "dangerous and unusual," *id.* at 27–31, and curiously accepts the burden even though common use is part and parcel of the dangerous-and-unusual analysis. *Fyock v. Sunnyvale*, 779 F.3d 991, 997 (9th Cir. 2015), *abrogated on other grounds by Bruen*, 597 U.S. 1. The State's effort to flip the burden defies Supreme Court precedent and history. And the State has failed to prove that these instruments are dangerous **or** unusual, and it must prove **both**. *Caetano*, 577 U.S. at 417 (Alito, J., concurring). That failure alone warrants striking down the ban—the Second Amendment conclusively

13

"protects the possession of use of weapons that are in common use at the time." *Bruen*, 597 U.S. at 21 (quoting *Heller*, 554 U.S. at 627) (quotation marks omitted).

**A. The State bears the burden to prove that the arms at issue are dangerous and unusual.**

The State mistakenly believes that the Plaintiffs bear the burden to prove that the arms are in common use. State.Br.18, 22–27. That is wrong. The State must prove both "that the weapon has uniquely dangerous propensities" **and** that the weapon is not "commonly possessed by law-abiding citizens for lawful purposes" at *Bruen*'s second step. *See, e.g.*, *Teter v. Lopez*, 76 F.4th 938, 950 (9th Cir. 2023) (quoting *Fyock*, 779 F.3d at 997), *reh'g en banc granted, op. vacated*, 93 F.4th 1150 (9th Cir. 2024); *Caetano*, 577 U.S. at 417 (Alito, J., concurring) ("A weapon may not be banned unless it is *both* dangerous *and* unusual."). The State's effort to flip the burden runs headlong into *Bruen*, *Caetano*, and *Heller*.

All that is required to trigger the State's historical-evidence burden is satisfaction of the Second Amendment's "plain text" elements: the people, keeping or bearing, and arms. *Bruen*, 597 U.S. at 31–32. Those elements are satisfied. *Supra* at 11–13. The State's burden-flipping argument has nothing to do with the "plain text" of the Second Amendment, *Bruen*, 597 U.S. at 32–33, which is all that *Bruen* analyzed before placing the burden squarely on the government and "turn[ing] to

14

[the] historical evidence," *id.* at 38. Anything beyond plain text, such as common use, falls under the State's burden. *Teter*, 76 F.4th at 950.[8]

The Supreme Court's historical analysis confirms that the State bears this burden. It repeatedly instructed that "historical tradition" conclusively protects arms "in common use" unlike "dangerous and unusual" arms. *Bruen*, 597 U.S. at 21; *Caetano*, 577 U.S. at 411–12; *Heller*, 554 U.S. at 627. The State ignores that any limitation on the scope of Second Amendment rights to weapons in common use can only be "[d]raw[n] from th[e] historical tradition" of prohibiting "dangerous and unusual weapons." *Bruen*, 597 U.S. at 47.

The State argues that common use is a step one inquiry because *Heller* discussed banning certain "short-barreled shotguns" and "M-16 rifles" without mentioning commonality. State.Br.22–24. But the State's argument again assumes that these weapons are not "Arms" under the plain text, which cannot be reconciled with the instructions that the term textually includes "instruments that facilitate armed self-defense," *Bruen*, 597 U.S. at 28, and "any thing that a man . . . useth in wrath to cast at or strike another," *Heller*, 554 U.S. at 581. *Heller* was merely offering presumptive dicta about the possibility that these weapons would be proven

---

[8] Plaintiffs likely do not bear the textual inquiry burden, *Duarte*, 101 F.4th at 676 n.8, but that issue is irrelevant because the text indisputably covers the prohibited conduct.

"dangerous and unusual." *Id.* at 627. This Court foreclosed the State's invitation to ignore history in favor of dicta. *Duarte*, 101 F.4th at 668 (prohibiting "[s]imply repeat[ing] *Heller*'s language about the presumptive[] lawful[ness] of felon firearm bans" (quotation marks and citation omitted)). The State must rely on "historical justifications," *Heller*, 554 U.S. at 635, for which it bears the burden, *Bruen*, 597 U.S. at 17.

The State's final plea is to dicta observing that the textual analysis includes answering "whether the weapon at issue is in common use today for self-defense." State.Br.23 (quoting *United States v. Alaniz*, 69 F.4th 1124, 1128 (9th Cir. 2023)). But *Alaniz* analyzed only step two; it "assume[d], without deciding, that step one of the *Bruen* test [was] met." 69 F.4th at 1129. The *Alaniz* Court's "stray comment[]" was immaterial and cannot "justify an outcome inconsistent with [*Bruen*'s] reasoning and judgment[]." *Brown v. Davenport*, 596 U.S. 118, 141 (2022). This Court got it right in later dicta: "presumptive protections of the Second Amendment may be rebutted as to arms not in common use today for self-defense." *United States v. Perez-Garcia*, 96 F.4th 1166, 1180–81 (9th Cir. 2024) (quotation marks omitted). The burden falls on the State, and it can do so only by "affirmatively prov[ing]" a justifying "historical tradition." *Bruen*, 597 U.S. at 19.

16

**B.    The State has not met its burden to prove that the arms at issue are uniquely dangerous and are not in common use.**

"[H]istorical tradition" shows that states can ban arms that are "dangerous and unusual" consistently with the Second Amendment, *Bruen*, 597 U.S. at 21, if the State proves both "that the weapon has uniquely dangerous propensities" and that the weapon is not "commonly possessed by law-abiding citizens for lawful purposes" today. *Fyock*, 779 F.3d at 997; *Bruen*, 597 U.S. at 47.

This test is "conjunctive": "A weapon may not be banned unless it is *both* dangerous *and* unusual." *Caetano*, 577 U.S. at 417 (Alito, J., concurring).[9] If the State's evidence fails either prong, its arms ban is unconstitutional. *Id.* at 420 (concluding banning stun guns—"widely owned and accepted" weapons—"violates the Second Amendment"); *Bruen*, 597 U.S. at 47. The State proved neither.

**Uniquely Dangerous Propensities.** The State's sole argument is that the prohibited arms "are particularly dangerous" because of "their concealability and striking power." State.Br.29. That argument is woefully insufficient. There is nothing **uniquely** dangerous to wooden sticks about concealability or propensity to

---

[9] If it were not conjunctive, Second Amendment analysis would collapse. "[V]irtually every covered arm" could be banned if mere dangerousness were enough, and *Heller* would have come out differently. *Caetano*, 577 U.S. at 418 (Alito, J., concurring). If uncommonness were enough, then the State could ban arms with technological advancements that make them safer. Neither possibility has any basis in text, history, or precedent.

17

cause bodily harm. *Fyock*, 779 F.3d at 997; *see DeCiccio*, 105 A.3d at 198 (holding that police batons "are neither especially dangerous nor unusual"). If those characteristics were enough, *Heller* would have come out differently. It didn't.

**Common Use.** A weapon is not unusual if "typically possessed by law-abiding citizens for lawful purposes." *Heller*, 554 U.S. at 625. Self-defense is a lawful purpose, *Bruen*, 597 U.S. at 32, but others—like "target shooting"—also suffice, *Friedman v. City of Highland Park*, 136 S. Ct. 447, 449–50 (2015) (Thomas, J., dissenting from the denial of certiorari). The State has not proven that the arms prohibited by California's exceptionally broad Billy Ban are not in common use for lawful purposes. The opposite is true: these instruments are used by ordinary people for all kinds of lawful purposes including self-defense and, in the cases of canes and walking sticks, assisting mobility. Six million Americans rely on canes every day.[10]

Start with batons and clubs. Multiple courts have held that those items are in common use. *See DeCiccio*, 105 A.3d at 198 (police batons); *Kessler*, 619 P.2d at 100 (clubs). They are the "simplest and oldest weapon," and even today "more Americans undoubtedly possess blunt force instruments than guns." Ruben, *supra*, 107 Iowa L. Rev. at 192, 209. California is the only state that blanketly bans them.

---

[10] Gell, *supra* note 4, at 855.

The State's argument completely crumbles when considering the limitless breadth of California's ban. Every day, Americans use the "ordinary" and "innocent" objects prohibited by the ban for self-defense and other lawful purposes. *Baugh*, 20 Cal.App.5th at 443–46. Some older Americans across the country even go so far as to train to use "their canes . . . as weapons of self-defense through a fighting technique known as 'cane fu'": this self-defense technique allows older Americans, in their words, "to take care of ourselves," to "feel safe," and to "defend yourself" without resort to lethal force.[11] Others find "empower[ment]" and "confidence" through reliance on the cane for self-defense.[12] But California outlaws self-defense by cane. Additional lawful purposes abound. Six million Americans use a cane for mobility. *Supra* note 4. Californians carry walking sticks in state parks, with the encouragement of California State Parks to use them for self-defense and mobility.[13]

There are a great many reasons why law-abiding citizens opt for non-lethal impact weapons, including reliance on ordinary blunt objects like canes and sticks. "Countless people may have reservations about using deadly force, whether for

---

[11] *From Cane to Weapon: Senior Citizens Fight Back with Cane Fu*, ABC News (Sept. 5, 2012) [link].

[12] Yamamoto, *supra* note 5.

[13] Junior Ranger Program Handbook at 256, Cal. State Parks (revised 2011) [link] ("A sturdy walking stick is a good idea; it can be used to ward off a lion.").

moral, religious, or emotional reasons." *Caetano*, 577 U.S. at 421 (Alito, J., concurring). Many people live in states—like California—with onerous restrictions on who may possess a firearm or where that firearm can be carried. Cal. Penal Code § 26840 (firearm safety certificate requirement); Cal. Penal Code § 26230 (sensitive-places restrictions). And still others, like older Americans, might have physical limitations that make other forms of armed self-defense untenable.

Upholding California's ban by finding that virtually all blunt objects are not sufficiently common would defy common sense. It would also have the effect of forcing citizens to use "*more* force for self-defense than they are comfortable wielding," *Caetano*, 557 U.S. at 421 (Alito, J., concurring), and, even worse, leave many defenseless. No precedent, tradition, or fact basis supports foreclosing a law-abiding citizen's preference for non-lethal self-defense and use of ordinary blunt objects to effectuate that preference. Courts must protect—not vitiate—law abiding citizens' right to arm themselves for self-defense in light of the legal, moral, and practical limitations they confront.

The instruments prohibited by California's ban are not uniquely dangerous, and they are commonly used for countless lawful purposes including self-defense. California certainly has not carried its burden of demonstrating otherwise, and that is sufficient to affirm the district court's judgment. Because these instruments are

"widely owned and accepted as a legitimate means of self-defense across the country," California's "categorical ban of such weapons therefore violates the Second Amendment." *Caetano*, 557 U.S. at 420 (Alito, J., concurring). *Bruen* made this clear: "weapons that are unquestionably in common use today" cannot be banned. 597 U.S. at 47. "[T]he traditions of the American people . . . demand[] our unqualified deference," *id.* at 47, and the dispositive tradition is that law-abiding citizens may keep and bear arms that are "in common use." *Heller*, 554 U.S. at 627.

## III. California failed to prove that its Billy Ban is consistent with this Nation's historical tradition of arms regulation.

The State has also failed to "affirmatively prove" a "comparable," "enduring," and "well-established" "historical tradition" that could support its ban. *Bruen*, 597 U.S. at 19, 27, 30, 67. That is true under the "straightforward" analysis applicable here, as well as under analogical reasoning.

### A. The ban fails under the "straightforward" analysis.

*Bruen* held that the historical inquiry is often "straightforward":

> [W]hen a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment. Likewise, if earlier generations addressed the societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional.

597 U.S. at 26–27. This analysis governs here for several reasons.

21

There is a rich tradition of using blunt weapons for defensive purposes. In the late 1700s, carrying a stick or cane became a popular form of self-defense in Europe and America.[14] The Irish martial art of bataireacht, where people "protected themselves with supposed walking sticks" and "shillelagh," "boomed in the 1700s [in Ireland] after the occupying British banned Irish people from carrying many types of weapons."[15] British fencing instructor, Andrew Lonnergan, wrote in 1771 that the "cane or stick" can provide "more room for your blow" and "may be more powerful" as compared to a sword.[16] In 1798 Boston, former Sons of Liberty member and fencing instructor Robert Hewes advertised lessons to "enable a person to defend himself with a cane,"[17] as martial arts instructors continue to do today, *supra* notes 5, 11. This robust Anglo-American historical tradition holds particular significance in light of the absence of any historical bans.

The State cannot deny that violence involving blunt weapons existed before, during, and after the founding, which confirms that "straightforward" analysis

---

[14] Ben Miller, *A History of Cane Self-Defense in America: 1798-1930*, Martial Arts New York (Aug. 16, 2016) [link].

[15] Ronan O'Connell, *Bataireach: The ancient Irish martial art making a comeback*, BBC (Oct. 17, 2022) [link].

[16] Miller, *supra* note 14.

[17] *Id.*

governs. The State's brief admits that "[d]uring the colonial and founding era, most violent crimes were committed with weapons such as **clubs**, dirks, and daggers." State.Br.34 (emphasis added); *see* 5-ER-817 through 819. And important moments in American history reflect the use of blunt instruments. A catalyst of the 1770 Boston Massacre was that "colonists struck the [British] soldiers with clubs and sticks," which led them to open fire.[18] Violence involving blunt instruments—including clubs, sticks, and canes—has persisted ever since. In 1856, a Massachusetts senator was beaten with a cane on the floor of the Senate Chamber.[19]

California's Billy Ban prohibits the possession of "any instrument or weapon of the kind commonly known as a billy." Cal. Penal Code § 22210. This statute encompasses all sorts of ordinary objects that would facilitate self-defense. But the State points to no historical laws from any possibly relevant era that categorically banned possession of virtually any instrument resembling a blunt object, such as clubs, batons, canes, sticks, and other ordinary objects wielded by law-abiding citizens for self-defense. The State's failure to show any distinctly similar tradition is determinative evidence that California's Billy Ban is unconstitutional.

---

[18] *Boston Massacre*, History (last updated Aug. 11, 2023) [link].

[19] *The Caning of Charles Sumner*, United States Senate [link].

The State does point to evidence that some "colonies and early States prohibited the **carrying** of clubs and similar weapons increasingly used as fighting instruments," State.Br.35 (emphasis added), and that some states and cities eventually regulated the intent or manner of carrying a billy club, *id.* at 37. These few examples do not constitute a sufficiently robust tradition of regulations; even if they did, they are not distinctly similar in burden and cannot justify the Billy Ban. All they do is confirm that California's ban fails under the straightforward analysis. The State's evidence proves that "earlier generations addressed the societal problem" of violence involving blunt instruments "through materially different means." *Bruen*, 597 U.S. at 26–27. California's Billy Ban is an "outlier[] that our ancestors would never have accepted." *Id.* at 30 (citation omitted).

### B. The ban fails under analogical reasoning.

California cannot rely on analogical reasoning—the "more nuanced approach"—because sticks and violence involving sticks are not "new" but have existed since the beginnings of civilization itself. *See Bruen*, 597 U.S. at 26–27; *id.* at 27, 30 (reserving analogical reasoning for "unprecedented societal concerns," "dramatic technological changes," or "*new*" issues). Even if reasoning by analogy were appropriate, the State has still failed to "affirmatively prove" that a "comparable tradition of regulation" supports the challenged law. *Id.* at 19, 27.

24

For a law to qualify as a "proper analogue," the State must show that the law is "relevantly similar" based on "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 28–29. A historical law cannot serve as an analogue if it does not "impose a comparable burden" that is "comparably justified." *Id.* at 29. The State's evidence also must evince a tradition that is both "well-established and representative." *Id.* at 30.

The proffered tradition must also be sufficiently historical. *Id.* at 37–39. The correct holding is that only founding era understandings can establish historical tradition, while post-founding sources serve as "confirmation" of the earlier understandings. *See id.* at 37; *Lara v. Comm'r Penn. State Police*, 91 F.4th 122, 129 (3d Cir. 2024) (government "identify a 'founding-era' historical analogue"). Rights applied against states generally must "have the same scope as against the Federal Government," *Bruen*, 597 U.S. at 37, lest "only a watered-down" version applies against states, *McDonald v. City of Chicago*, 561 U.S. 742, 765 (2008). This is how the Supreme Court interprets other Bill of Rights guarantees,[20] and it dooms the State's reliance on historical laws from Reconstruction and later. *But see Teter*, 76 F.4th at 951 (permitting reference to laws enacted "close in time to . . . 1868").

---

[20] *Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464, 482 (2020); *Ramos v. Louisiana*, 590 U.S. 83, 89–92 (2020).

The State begins by claiming a tradition of banning "especially dangerous weapons." State.Br.32–33. But the Supreme Court recognized only a tradition of prohibiting weapons that are dangerous **and** unusual, *Bruen*, 597 U.S. at 47, and the State proved neither. There is nothing uniquely or especially dangerous about canes and sticks, which are obviously more comparable to a hammer than dynamite.

As for billy club regulation, the State cites four state laws that banned their concealed carry between 1866 and 1887 and six municipalities that banned their concealed carry between 1862 and 1898. State.Br.37–38. It also cites an 1882 West Virginia law that banned all carry. *Id.* at 38. But these laws do not evince a tradition that could justify California's Billy Ban. First, they are too late to establish historical tradition, if for no other reason than because they "contradict[] earlier evidence" that earlier generations freely carried blunt instruments for self-defense. *Bruen*, 597 U.S. at 66; *Espinoza*, 591 U.S. at 482 (holding "development" that "arose in the second half of the 19th century" could not "establish an early American tradition"). Second, they largely only banned concealed carry (one banned all carry), which is not a "comparable burden" to California's ban on possession. *Bruen*, 597 U.S. at 29. *Bruen* held that laws restricting the manner of carry could not justify banning all carry, *id.* at 38, which means those restrictions cannot justify a more-burdensome ban on **possession** of all blunt objects. *See Teter*, 76 F.4th at 951–52; *Maryland Shall*

*Issue, Inc. v. Moore*, 86 F.4th 1038, 1046 n.9 (4th Cir. 2023) (holding *Bruen*'s dicta about "shall-issue *carry* regimes" did not justify "*more burdensome* restrictions, like shall-issue *possession* regimes"), *reh'g en banc granted*, 2024 WL 124290 (4th Cir. Jan. 11, 2024).

The State cites a few regulations of billy clubs limiting the intent for which one could use them. State.Br.37–38. New York's 1866 law generally required "intent to use [the weapon] against any other person." 1866 N.Y. Rev. Stat. ch. 716, §§ 1–2, *reprinted in* Throop, Revised Statutes of the State of New York, Vol. 3, at 2512 (1882). Florida in 1868 similarly criminalized being "armed" with a billy while "committing a criminal offense." 1868 Fla. Stat., ch. 1637, *reprinted in* Blount, *et al.*, Rev. Stats. of Fla. 782–83, tit. 2, art. 5, § 2423 (1892). But *Bruen* already rejected this analogy: a restriction on "the intent for which one could carry arms" cannot justify an outright ban on carry, let alone a categorical ban on possession that covers a far broader swath of instruments. 597 U.S. at 38. These historical laws are as inapplicable as the Northampton-style laws barring carry with intent to "terrify," which *Bruen* rejected as improper analogues for carry bans. 597 U.S. at 44–56, 69–70.

The State repeats the same errors by citing 19th century laws restricting other kinds of weapons. It cites various laws restricting "the carrying of Bowie knives and

other fighting knives," State.Br.40, but that effort fails for the same reasons as above: restrictions on carry are not comparable burdens, and restricting a fighting knife is not remotely analogous to a ban on virtually all blunt objects including sticks and canes.[21] The State also cites two 1849 statutes restricting the possession and use of slungshots (a weighted object tied to the end of a rope) but only "as against any other person," 1849 N.Y. Laws 403–404, ch. 278, §§ 1–2; 1849 Vt. Acts & Resolves 26, No. 36, §§ 1–2, and an 1881 Illinois statute that banned all slungshot possession, 1881 Ill. Laws 73, § 1. These statutes fail to establish a tradition for several reasons. First, they do not show a "comparable burden" because they largely banned only carry. *Bruen*, 597 U.S. at 29. Second, the citation to "three restrictions" was "doubt[ed]" to "suffice to show a tradition" in *Bruen*, and it fails here. *Id.* at 46. Third, narrow regulations of slungshots did not restrict possession of arms comparably to California's ban of any blunt object that could be used for self-defense. And finally, the district court did not enjoin the statute as to slungshots; it only enjoined the State "from implementing or enforcing California Penal Code § 22210 as it applies to a billy." 1-ER-2.

---

[21] The State cites an 1837 Georgia statute that barred "keep[ing]" or "hav[ing]" a Bowie knife, which the State presents as a ban on possession. State.Br.40–41 (citing 1837 Ga. Acts. 90, § 1). But the statute in § 4 excludes open carry from its scope, which shows that it merely banned concealed carry and is not comparable in breadth or burden to the Billy Ban. *Teter*, 76 F.4th at 951–52.

28

The only historical example of a possessory ban of virtually all blunt objects is the 1917 California statute challenged here. It is an ahistorical outlier, and the State has not met its burden to prove otherwise.

## IV. California's broadly and vaguely worded ban raises serious due process concerns and violates *Bruen*'s admonition against governmental discretion.

A criminal statute is void for vagueness if it fails to give "fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). The *Bruen* Court likewise expressed deep concern about state licensing regimes that confer "open-ended discretion" to the state officials responsible for regulating the right to keep and bear arms. *See* 597 U.S. at 79 (Kavanaugh, J., concurring). These concerns weigh strongly against California's Billy Ban, which invites arbitrary enforcement by handing limitless discretion to prosecutorial officials.

California's ban appears to criminalize the possession of "ordinary" and "innocent" blunt objects, so long as the possessor would use it for self-defense "if the need arose." *Baugh*, 20 Cal.App.5th at 443–46. That is hardly a predictable "standard[]" that inters "arbitrary enforcement." *Johnson*, 576 U.S. at 595. The only limiting principle on the statute's reach is the "unchanneled discretion" yielded by prosecutorial officials. *Bruen*, 597 U.S. at 79 (Kavanaugh, J., concurring). Such an

29

arbitrary, limitless criminal law stands fundamentally at odds with due process, *Bruen*, and our Nation's other constitutional values.

Like all citizens, older Americans need fair notice of what conduct California prohibits, not vague and broad prohibitions limited only by prosecutorial discretion. The State's preference for arbitrary enforcement only cheapens the law. Those citizens also need a practical way to defend themselves, yet California has criminalized the use of ordinary instruments like sticks and canes—in defiance of the Second Amendment's "unqualified command." *Id.* at 17. California's Billy Ban is unconstitutional. It was properly enjoined.

## CONCLUSION

For the foregoing reasons, the district court's judgment should be affirmed.

Dated: June 13, 2024                    Respectfully Submitted,

*/s/ John Parker Sweeney*
John Parker Sweeney
James W. Porter, III
W. Chadwick Lamar Jr.
Bradley Arant Boult Cummings LLP
1615 L Street N.W., Suite 1350
Washington, D.C. 20036
Phone: 202-719-8216
Facsimile: 202-719-8316
jsweeney@bradley.com

Counsel for *Amicus Curiae*

30

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 24-1039

I am the attorney or self-represented party.

**This brief contains** 6,973 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◯ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.

☐ a party or parties are filing a single brief in response to multiple briefs.

☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated _____.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ John Parker Sweeney **Date** June 13, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of June 2024, a copy of the foregoing was served via electronic delivery to all parties' counsel via the Court's appellate CM/ECF system, which will forward copies to Counsel of Record.

*/s/ John Parker Sweeney*
John Parker Sweeney

Counsel for *Amicus Curiae*