Case No. 24-1039

_____

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**
_____

RUSSELL FOUTS AND TAN MIGUEL TOLENTINO,

*Plaintiffs-Appellees*,

v.

ROB BONTA, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF CALIFORNIA,

*Defendant-Appellant*.

_____

Appeal from a Judgment of United States District Court
For the Southern District of California
Civ. No. 3:19-cv-01662-BEN-JLB
United States District Court Judge Roger T. Benitez

_____

*AMICUS CURIAE* **BRIEF IN SUPPORT OF
APPELLEES RUSSELL FOUTS AND TAN MIGUEL
TOLENTINO BY FREEDOM FIGHTERS FOUNDATION**
[All Parties have consented. F.R.A.P. 29(a)]

_____

Robert C. Wright
WRIGHT, L'ESTRANGE & ERGASTOLO
402 West Broadway, Suite 1800
San Diego, California 92101
(619) 231-4844
(619) 231-6710 (facsimile)
rwright@wlelaw.com

Attorneys for *Amicus Curiae*
Freedom Fighters Foundation

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

*Amicus Curiae* California Freedom Fighters Foundation states that it has no parent corporation and no publicly held corporation owns ten percent of or more of its stock.

## TABLE OF CONTENTS

RULE 26.1 CORPORATE DISCLOSURE STATEMENT ..................................... i

IDENTITY OF *AMICUS CURIAE* ................................................................1

INTRODUCTION .........................................................................................2

ARGUMENT ................................................................................................4

    I.   THE APPELLEES SHOULD PREVAIL UNDER THE
          CORRECT APPLICATION OF SUPREME COURT PRINCIPLES............4

    II.  THE SECOND AMENDMENT RIGHT TO KEEP AND
          BEAR ARMS INCLUDES CLUBS, WHICH WERE USED
          FOR SELF-DEFENSE IN ENGLAND LONG BEFORE 1791......................6

    III. THE PLAINTIFFS SATISFIED THEIR BURDEN TO SHOW
          THAT THE PLAIN TEXT OF THE SECOND AMENDMENT
          COVERS THEIR CONDUCT. .................................................................7

    IV. THIS CASE CORRECTS YEARS OF CALIFORNIA LAW
          ON BILLY CLUBS VIOLATING THE SECOND AMENDMENT.............9

CONCLUSION ..........................................................................................12

STATEMENT OF RELATED CASES ...................................................................13

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ......................................14

CERTIFICATE OF SERVICE ......................................................................15

# TABLE OF AUTHORITIES

Cases

*Caetano v. Massachusetts*,
   577 U.S. 411 (2016) ................................................................................ 5, 8

*District of Columbia v. Heller*,
   554 U.S. 570 (2008) ............................................................................ passim

*Fouts v. Bonta*,
   561 F.Supp.3d 941 (S.D.Cal. 2021) ............................................................ 3

*National Association for Gun Rights v. Lamont*,
   685 F.Supp. 3d 63 (D. Conn. 2023) ........................................................ 7, 8

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
   597 U.S. 1 (2022) ................................................................................ passim

*People v. Davis*,
   214 Cal.App.4th 1322 (2013) .................................................................. 4, 11

*People v. Grubb*,
   63 Cal.2d 614 (1965) .................................................................................. 9

*People v. Liscotti*,
   219 Cal.App.4th Supp. 1 (2013) ............................................................ 4, 10

*Teter v. Lopez*,
   76 F.4th 938 (9th Cir. 2023) ..................................................................... 7, 8

*U.S. v. Alaniz,*
   69 F.4th 1124 (9th Cir. 2023) ...................................................................... 7

*U.S. v. Miller*,
   307 U.S. 174 (1939) .................................................................................. 11

*U.S. v. Perez-Garcia*,
   96 F.4th 1166 (9th Cir. 2024) ...................................................................... 7

*Young v. Hawaii*,
   992 F.3d 765 (9th Cir. 2021) ....................................................................... 2

**Statutes**

California Penal Code section 22210..........................................................................9

California Penal Code section 22215........................................................................10

**Other Authorities**

Joyce Lee Malcolm, *To Keep and Bear Arms; The Origins of the Anglo-American Right* (Harvard University Press, 1996).................................................................6

## IDENTITY OF *AMICUS CURIAE*

The Freedom Fighters Foundation ("Foundation") is a non-profit California public benefit corporation dedicated to the principles of constitutional limited government, conservative family values, free markets, and individual liberty. Its mission is to advance and to protect the rights guaranteed by the U.S. Constitution as originally understood by the Founding Fathers.

To achieve its goals, the Foundation has developed a comprehensive civics and firearm safety program offered to communities nationwide. The Foundation provides basic firearm safety instruction and a civics course to American communities empowering them with knowledge. The course emphasizes the importance of the U.S. Constitution, the Bill of Rights, the obligations of citizens when exercising those rights, and the original intent of the Constitution.

The parties consent to the Foundation filing this brief.

No counsel for a party has authored this brief in whole or in part, and no counsel or party made a monetary contribution intended to fund the preparation or submission of this brief. No person other than the *Amicus Curiae* made a monetary contribution to its preparation or submission.

## INTRODUCTION

The Supreme Court's decision in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022) ("*Bruen"*) created an earthquake in Second Amendment litigation. This case and many others were profoundly affected by it.

After the Supreme Court's landmark decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008) ("*Heller"*), courts in the Ninth Circuit, and in many other circuits and states, incorrectly interpreted *Heller* to require a two-step approach in evaluating whether a statute impermissibly negated Second Amendment rights. First, the court determined whether the statute imposed a prohibition falling outside the historical scope of the Second Amendment. If Second Amendment rights were implicated, the court took the second step of weighing the public's need for protection against the degree of restriction on the Second Amendment right—typically by using a means-ends intermediate or strict scrutiny approach. The Ninth Circuit also followed a rule that long-standing, accepted regulations affecting Second Amendment rights could be upheld without further analysis. See *Young v. Hawaii,* 992 F.3d 765, 783 (9th Cir. 2021).

After 14 years of Second Amendment decisions based on this erroneous legal framework, *Bruen* brought it to an end in a ground-breaking decision holding that:

- When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct under the Second Amendment. *Bruen* at 24.

- The burden then falls to the government to justify the regulation by demonstrating that it is "consistent with this Nation's historical tradition of firearm regulation." *Bruen* at 4.

The failure of pre-*Bruen* courts to follow the correct analytical approach in Second Amendment cases invalidated those decisions. Here, in its first decision, the trial court disapproved of making long-term regulations a touchstone for Second Amendment analysis but recognized the duty to follow precedent. See *Fouts v. Bonta,* 561 F.Supp.3d 941, 948 (S.D.Cal. 2021). The current decision is post-*Bruen* and accurately reflects *Bruen's* guidelines.

*Bruen* should have caused states like California to examine their arms regulations and abolish those that cannot withstand Second Amendment challenge under *Bruen*. Unfortunately, that did not happen here. California Penal Code section 22210, banning possession of "any leaded cane, or any instrument or weapon of the kind commonly known as a billy, blackjack, sandbag, sandclub, sap,

3

or slungshot" impairs the Second Amendment rights to keep and bear arms and cannot be defended by the Nation's historical tradition of arms regulation on clubs in the late Nineteenth Century.

Furthermore, California appellate cases decided under the pre-*Bruen* framework, such as *People v. Liscotti,* 219 Cal.App.4th Supp. 1 (2013) (holding that a weapon normally possessed by a law abiding person must have some reasonable relationship to the preservation or efficiency of a well-regulated militia) and *People v. Davis,* 214 Cal.App.4th 1322 (2013) (holding that a baseball bat used for self-defense may be an illegal billy) also violate the Second Amendment, have no precedential value, and should be overruled.

In this appeal the State contends that the trial court erred by not requiring the plaintiffs to meet their "burden" under *Bruen* and that historical tradition supports its regulation of billys. For the reasons discussed below, both arguments fail.

The State's position ultimately leads to the absurd result that the Second Amendment permits a person to keep and bear firearms for self-defense but not a much less dangerous billy club.

## ARGUMENT

I. **THE APPELLEES SHOULD PREVAIL UNDER THE CORRECT APPLICATION OF SUPREME COURT PRINCIPLES.**

Two Supreme Court cases control the outcome here—*Heller* and *Bruen*. The applicable principles from those cases follow:

4

- The Second Amendment "codified a [pre-existing] right 'inherited from our English ancestors.'" *Heller* at 599.

- "[T]he Second Amendment extends, *prima facie*, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Heller* at 582. (Emphasis added.) See also, *Caetano v. Massachusetts*, 577 U.S. 411, 416 & n. 3 (2016) (holding that the Second Amendment protects all current bearable arms, including stun guns).

- "[A]rms" covers "any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another." *Heller* at 581.

- "[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation . . . the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen* at 17.

- "[W]hen a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Bruen* at 26.

5

- "[E]ven though the Second Amendment's definition of 'arms' is fixed according to its historical understanding, the general definition covers modern weapons that facilitate self-defense." *Bruen* at 28.

## II. THE SECOND AMENDMENT RIGHT TO KEEP AND BEAR ARMS INCLUDES CLUBS, WHICH WERE USED FOR SELF-DEFENSE IN ENGLAND LONG BEFORE 1791.

The State's narrow characterization of the billy as a specialized form of club carried by police officers which first surfaced in the nineteenth century is inaccurate. By the time the Second Amendment was ratified in 1791, clubs had long been recognized as a weapon in England possessed by law-abiding citizens for self-defense. For example, during the English Civil War (1642-1646), a group of 1,500 Shropshire farmers determined to follow neither the King nor Parliament formed the "club movement," armed only with clubs and pitchforks. Their purpose was "to stand upon their own guard for the security of their persons and estates." Their ranks eventually swelled to over 15,000. See Joyce Lee Malcolm, *To Keep and Bear Arms: The Origins of the Anglo-American Right*, p. 22 (Harvard University Press, 1996). As the *Heller* Court notes, the right to use arms for defense was part of the pre-existing "right inherited from our English ancestors" enshrined in the Second Amendment. *Heller* at 599.

Indeed, a club may have been mankind's first weapon. A wooden club is easy to make and helpful for self-defense. Today, hikers and walkers can be

6

observed every day in California carrying clubs of varying lengths for self-defense against dogs, snakes, and the unlawful conduct by others. Thus, even if the club did not have a place in English history but was a modern invention for self-defense, it would qualify under *Bruen* as a "modern instrument[ ] that facilitate[s] armed self-defense" and have Second Amendment protection. *Bruen* at 28.

### III. THE PLAINTIFFS SATISFIED THEIR BURDEN TO SHOW THAT THE PLAIN TEXT OF THE SECOND AMENDMENT COVERS THEIR CONDUCT.

The State argues that the Plaintiffs have failed to meet their burden of showing in step one of the *Bruen* test that clubs are in common use today for self-defense, citing *U.S. v. Alaniz,* 69 F.4th 1124, 1128 (9th Cir. 2023) and *National Association for Gun Rights v. Lamont*, 685 F.Supp. 3d 63, 90 (D. Conn. 2023). O.B., pp. 23, 27. The State also concedes that in *U.S. v. Perez-Garcia*, 96 F.4th 1166, 1181 (9th Cir. 2024), (internal quotation marks omitted) the court holds that the "presumptive protections of the Second Amendment may be rebutted as to arms not in common use today for self-defense." O.B., p. 23, n.8. And the State argues that the now vacated opinion of *Teter v. Lopez*, 76 F.4th 938, 950 (9th Cir. 2023), does not reflect the "best understanding of [Ninth Circuit] Second Amendment precedent." O.B., p. 28.

*Alaniz* and *Lamont* are distinguishable. In *Alaniz*, a Second Amendment challenge to sentencing guidelines relating to possession of a firearm during

7

commission of a felony, step one of the *Bruen* test was assumed to be met without analysis or discussion. *Alaniz,* 69 F.4th at 1129. In *Lamont,* the plaintiffs challenged a Connecticut statute prohibiting the purchase of certain defined "assault" weapons and large capacity magazines. The case involved the showing that must be made in a request for an injunction to establish Second Amendment protection for a particular modern firearm, not a club. *Lamont,* 685 F.Supp.3d at 71. The State does not identify its concerns about the decision in *Teter,* and we do not know the outcome of an *en banc* hearing in that case.

The first requirement of *Bruen*, that the "the Second Amendment's plain text covers an individual's conduct," makes no mention of the plaintiff having any burden. In *Bruen*, the court pointed out that the Petitioners were ordinary law-abiding adult citizens – part of "the People." It was undisputed that hand guns are weapons "in common use" today for self-defense. It then turned to whether the plain text of the Second Amendment protected their proposed course of conduct – carrying handguns for self-defense. *Bruen* at 31-32. The court supports its analysis with references to *Heller*, 554 U.S. at 627 and *Caetano,* 577 U.S. at 411-412. In the *Heller* reference, the court refers to *U.S. v. Miller,* 307 U.S. 174, 179 (1939) for the holding that "the sorts of weapons protected were those 'in common use at the time.'" The 'time' in *Miller* refers to the period of Constitutional

8

ratification – 1791 – when all male civilians were expected to be able to defend the country as members of a State militia and bring their own arms for that purpose.

In the present case, the Plaintiffs did not have to prove that billy clubs are commonly owned today because clubs were commonly owned for lawful purposes of self-defense before 1791. No ground exists to argue that once Second Amendment protection is established for a club, the right can be lost if clubs are less commonly used today than in 1791. *Heller* at 627.

Here, the Plaintiffs met their burden under *Bruen*. The trial court described it as follows:

> "Plaintiffs are 'law-abiding citizens who want to possess a commonly-owned billy or baton for lawful purposes.' … Plaintiffs would acquire, possess, carry and use a billy to protect themselves, their homes, their families and their businesses. A billy is not an unusual weapon and both sides have previously agreed that a billy is an 'arm.' Therefore, Plaintiffs have met their burden of showing that the prohibited conduct comes within the text of the Second Amendment."

Decision, p. 5, ll. 11-16.

## IV. THIS CASE CORRECTS YEARS OF CALIFORNIA LAW ON BILLY CLUBS VIOLATING THE SECOND AMENDMENT.

California Penal Code section 22210 and its predecessor, section 12020, reflect a Legislative decree "as criminal the possession of ordinarily harmless objects when the circumstances of possession demonstrate an immediate atmosphere of danger." *People v. Grubb*, 63 Cal.2d 614, 621 (1965). Thus, the

9

statute makes criminal "the possession of a table leg, in one sense an obviously useful item, when it is detached from the table and carried at night in a 'tough' neighborhood to the scene of a riot." *Id.*

In 1965, Second Amendment jurisprudence had not reached the point where it would be obvious that prohibition of an "arm" like a club violates the Second Amendment. But California courts have reached a number of incorrect decisions post-*Heller*. For example, in *People v. Liscotti*, 219 Cal.App.4th Supp. 1 (2013), a prosecution for possession of a baseball bat for self-defense, the court made two findings that conflict with *Heller*: (i) that for a weapon to be the type normally possessed by a law-abiding person, there needs to be some factual showing that possession or use of the weapon "has some reasonable relationship to the preservation or efficiency of a well regulated militia;" (*People v. Liscotti*, 219 Cal.App.4th Supp. at 5) and (ii) that the statute survives "'intermediate scrutiny' … because the statute does not completely ban the possession of these types of weapons." *Liscotti*, 219 Cal.App.4th at 6. The court also relied on the exception provided by section 22215 of the California Penal Code, for manufacture, sale, and possession of wooden clubs or batons by special police officers or uniformed security guards authorized to carry any wooden club or baton. The court misapplied *Heller* by using a "means-ends" balancing approach under intermediate scrutiny. It was correctly but unsuccessfully argued by the Defendant's counsel

statute makes criminal "the possession of a table leg, in one sense an obviously useful item, when it is detached from the table and carried at night in a 'tough' neighborhood to the scene of a riot." *Id.*

In 1965, Second Amendment jurisprudence had not reached the point where it would be obvious that prohibition of an "arm" like a club violates the Second Amendment. But California courts have reached a number of incorrect decisions post-*Heller*. For example, in *People v. Liscotti*, 219 Cal.App.4th Supp. 1 (2013), a prosecution for possession of a baseball bat for self-defense, the court made two findings that conflict with *Heller*: (i) that for a weapon to be the type normally possessed by a law-abiding person, there needs to be some factual showing that possession or use of the weapon "has some reasonable relationship to the preservation or efficiency of a well regulated militia;" (*People v. Liscotti*, 219 Cal.App.4th Supp. at 5) and (ii) that the statute survives "'intermediate scrutiny' … because the statute does not completely ban the possession of these types of weapons." *Liscotti*, 219 Cal.App.4th at 6. The court also relied on the exception provided by section 22215 of the California Penal Code, for manufacture, sale, and possession of wooden clubs or batons by special police officers or uniformed security guards authorized to carry any wooden club or baton. The court misapplied *Heller* by using a "means-ends" balancing approach under intermediate scrutiny. It was correctly but unsuccessfully argued by the Defendant's counsel

that "weapons such as these have been carried since the beginning of time," but "no evidence was introduced to that effect at the trial on this matter." *Id.* at 5.

Similarly, in *People v. Davis*, 214 Cal.App.4th 1322 (2013), a defendant who carried a baseball bat in the back seat of his car was found guilty of violating California Penal Code section 12020(a), renumbered as section 22210 (possession of any instrument or weapon commonly known as a billy, blackjack, slungshot, sandclub, sap, or sandbag). Although the Defendant claimed the club was used for self-defense, the court relied on the legislative determination that mere possession of ordinarily harmless objects may be criminal "when the circumstances of possession demonstrate an immediate atmosphere of danger." *People v. Davis,* 214 Cal.App.4th at 1328.

In *Davis,* the Court of Appeal deferred entirely to the Legislature to decide what weapons meet the definition of those "not typically possessed by law-abiding citizens for lawful purposes." *Id.* at 1333. In its analysis of *Heller*, the Court erred in relying exclusively on the Legislature's determination that a club is primarily used by criminals for unlawful purposes. If that were a proper analysis under *Heller*, the Legislature could eliminate the carrying of firearms – or any other arms – by simply determining that they are not typically possessed by law-abiding citizens for lawful purposes.

The *Bruen* analysis requires a different result in these cases. Otherwise, we have the absurd result that there is a Constitutional right to bear arms in public – the essence of *Bruen* – but not the right to carry a far less dangerous arm – a billy club – for self-defense.

## CONCLUSION

Appellees are law-abiding citizens seeking to own billy clubs for self-defense. Clubs were among the arms protected in 1791 by the Second Amendment. Appellees have met their burden of proof under the first requirement of *Bruen.* The restraint on ownership of billy clubs is inconsistent with the Nation's historical tradition of firearm regulation. For these reasons, the Appellees should prevail in this case. The decision will correct years of California law violating the Second Amendment.

                                                Respectfully submitted,

                                                WRIGHT, L'ESTRANGE & ERGASTOLO

Dated: June 14, 2024              */s/ Robert C. Wright*
                                                Robert C. Wright

                                                Attorneys for *Amicus Curiae*
                                                Freedom Fighters Foundation

## STATEMENT OF RELATED CASES

*Amicus Curiae* Freedom Fighters Foundation is not aware of any related cases.

Dated: June 14, 2024                                   /s/   *Robert C. Wright*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1. This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 3,193 words and complies with the word limit of Fed. R. App. 32(a)(7)(B)(1).

2. This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman.

Dated: June 14, 2024.

            */s/ Robert C. Wright*
            Robert C. Wright

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2024, I electronically filed the foregoing *Amicus Curiae* Brief in Support of Appellees Russell Fouts and Tan Miguel Tolentino by Freedom Fighters Foundation with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

                                        Respectfully submitted,

                                        WRIGHT, L'ESTRANGE & ERGASTOLO

Dated: June 14, 2024              */s/ Robert C. Wright*
                                                Robert C. Wright

                                                Attorneys for *Amicus Curiae*
                                                Freedom Fighters Foundation