No. 24-1039

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

————————————

RUSSELL FOUTS, ET AL.,

*Plaintiffs-Appellees*,

v.

ROB BONTA, IN HIS OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF THE STATE OF CALIFORNIA,

*Defendant-Appellant*.

————————————

## On Appeal from the United States District Court
## for the Southern District of California
No. 3:19-cv-01662-BEN-JLB
The Honorable Roger T. Benitez, Judge

————————————

## APPELLANT'S REPLY BRIEF

————————————

ROB BONTA
*Attorney General of California*
THOMAS S. PATTERSON
*Senior Assistant Attorney General*

JOHN D. ECHEVERRIA
R. MATTHEW WISE
*Supervising Deputy Attorneys General*
CHRISTINA R.B. LÓPEZ
KATRINA UYEHARA
*Deputy Attorneys General*

CALIFORNIA DEPARTMENT OF JUSTICE
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
(415) 510-3479
John.Echeverria@doj.ca.gov
*Attorneys for Defendant and Appellant*

July 29, 2024

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................1

Argument......................................................................................................3

I.   Plaintiffs Fail to Clear the High Bar to Prevail on a Facial Challenge
     to California's Restrictions on Billies ..............................................4

II.  Plaintiffs Have Failed to Establish that Section 22210 Regulates
     Presumptively Protected Conduct .....................................................7

     A.   Billies Are Not Presumptively Protected Because They Are Not
          in "Common Use for Self-Defense" ..........................................8

     B.   Billies Are Not Presumptively Protected Because They Are
          "Dangerous and Unusual"........................................................15

III. California's Restrictions on Billies Are Consistent with the Principles
     Underpinning Historical Weapons Regulations ..............................20

     A.   *Rahimi* Offers Guidance on the Historical Analysis in Second
          Amendment Cases....................................................................21

     B.   California's Restrictions on Billies Accord with the Historical
          Tradition of Regulating Particularly Dangerous Weapons.................22

Conclusion ................................................................................................29

Certificate of Compliance .........................................................................30

Certificate of Service ................................................................................31

# TABLE OF AUTHORITIES

**Page**

### CASES

*Antonyuk v. Chiumento*
  89 F.4th 271 (2d Cir. 2023) ...............................................................5, 6

*B&L Prods., Inc. v. Newsom*
  104 F.4th 108 (9th Cir. 2024) ...........................................................7, 8, 9

*Bevis v. City of Naperville* (*Bevis II*)
  85 F.4th 1175 (7th Cir. 2023) ...........................................................9, 15

*Caetano v. Massachusetts*
  577 U.S. 411 (2010)..............................................................................16

*Consumer Fin. Prot. Bureau v. Cmty. Fin. Servs. Ass'n of Am.*
  601 U.S. 416 (2024)..............................................................................28

*Cruz v. Int'l Collection Corp.*
  673 F.3d 991 (9th Cir. 2012) ...............................................................13

*Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*
  664 F. Supp. 3d 584 (D. Del. 2023)......................................................17

*Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*
  __ F.4th __, 2024 WL 3406290 (3d Cir. July 15, 2024) ......................9

*District of Columbia v. Heller*
  554 U.S. 570 (2008).....................................................................*passim*

*Doe v. Bonta*
  101 F.4th 633 (9th Cir. 2024) ................................................................8

*Duncan v. Bonta*
  83 F.4th 803 (9th Cir. 2023) .................................................................13

*Hoye v. City of Oakland*
  653 F.3d 835 (9th Cir. 2011) ..................................................................7

## TABLE OF AUTHORITIES
### (continued)

**Page**

*McCullen v. Coakley*
573 U.S. 464 (2014).................................................................17

*McRorey v. Garland*
99 F.4th 831 (5th Cir. 2024) ......................................................8

*Moody v. NetChoice, LLC*
144 S. Ct. 2383 (2024).........................................................5, 13

*Nat'l Ass'n for Gun Rights v. Lamont*
685 F. Supp. 3d 63 (D. Conn. 2023)...........................................19

*New York State Rifle & Pistol Ass'n v. Bruen*
597 U.S. 1 (2022).............................................................*passim*

*Ocean State Tactical, LLC v. Rhode Island*
95 F.4th 38 (1st Cir. 2024)........................................................17

*Or. Firearms Fed'n v. Kotek*
682 F. Supp. 3d 874 (D. Or. 2023) ................................10, 11, 19

*People v. Davis*
214 Cal. App. 4th 1322 (2013) ............................................10, 18

*People v. Grubb*
63 Cal. 2d 614 (1965) ....................................................10, 12, 18

*People v. Hester*
58 Cal. App. 5th 630 (2020) .....................................................12

*Quackenbush v. Allstate Ins. Co.*
517 U.S. 706 (1996).................................................................13

*R.R. Comm'n of Tex. v. Pullman Co.*
312 U.S. 496 (1941).................................................................13

*State v. Blocker*
291 Or. 255 (1981).............................................................19, 20

# TABLE OF AUTHORITIES
## (continued)

**Page**

*State v. DeCiccio*
   315 Conn. 79 (2014) ........................................................................19

*State v. Kessler*
   289 Or. 359 (1980)....................................................................19, 20

*Teixeira v. County of Alameda*
   873 F.3d 670 (9th Cir. 2017) ...............................................................8

*Tyler v. Cain*
   533 U.S. 656 (2001)..............................................................................6

*United States v. Alaniz*
   69 F.4th 1124 (9th Cir. 2023) ..................................................9, 13, 14

*United States v. Berger*
   __ F. Supp. 3d __, 2024 WL 449247 (E.D. Pa. Feb. 6, 2024) ...........11

*United States v. Duarte*
   101 F.4th 657 (9th Cir. 2024) ...........................................................26

*United States v. Duarte*
   2024 WL 3443151 (9th Cir. July 17, 2024) .....................................26

*United States v. Henry*
   688 F.3d 637 (9th Cir. 2012) ............................................................16

*United States v. McAdory*
   935 F.3d 838 (9th Cir. 2019) ............................................................14

*United States v. Perez-Garcia*
   96 F.4th 1166 (9th Cir. 2024) ....................................................*passim*

*United States v. Rahimi*
   144 S. Ct. 1889 (2024)..............................................................*passim*

*United States v. Salerno*
   481 U.S. 739 (1987)....................................................................3, 4, 5

iv

# TABLE OF AUTHORITIES
## (continued)

Page

STATUTES

United States Code, Title 18
 § 922(g)(8) ...................................................................................*passim*
 § 922(g)(8)(C)(i) ......................................................................................5
 § 922(g)(8)(C)(ii) .....................................................................................5

California Penal Code
 § 22210...........................................................................................*passim*

33 Hen. 8, ch. 6, § 1 (1541) ......................................................................23

1837 Ga. Acts 90, § 1................................................................................24

C. B. Pierce, *Charter and Ordinances of the City of Leavenworth, with an Appendix* 45 (1863), § 23....................................................18

CONSTITUTIONAL PROVISIONS

United States Constitution
 First Amendment ..................................................................................9
 Second Amendment..................................................................*passim*
 Fourteenth Amendment ..................................................................2, 24

Oregon Constitution
 Article I, § 27 .....................................................................................20

OTHER AUTHORITIES

Blackstone, *Commentaries on the Laws of England* 148 (1769) ............16

Schwoerer, *Gun Culture in Early Modern England* 55 (2016) ...............17

Sharp, *Tracts, Concerning the Ancient and Only True Legal Means of National Defence, by a Free Militia* 17-18 (ed. 1782) .......................16

Smith, *'Not All History Is Created Equal': In the Post-*Bruen *World, the Critical Period for Historical Analogues Is When the Second Amendment Was Ratified in 1791, and Not 1868* (Oct. 1, 2022) ......................27

v

## INTRODUCTION

Plaintiffs' challenge to California Penal Code Section 22210's restrictions on "any instrument or weapon of the kind commonly known as a billy" fails as a matter of law. At both stages of the Supreme Court's text-and-history standard, those longstanding restrictions comport with the Second Amendment. As a threshold matter, plaintiffs have failed to demonstrate that their proposed conduct is presumptively protected by the Second Amendment. Plaintiffs have not shown that billies generally, or the particular police batons they seek to possess, are presumptively protected weapons in common use by civilians for ordinary self-defense. Even if billies were presumptively protected, principles that underlie a history of regulation confirm that California's restrictions on billies are constitutionally permissible.

California's restrictions on the manufacture, sale, and possession of billies are consistent with the historical principle reflected in numerous analogues enacted throughout American history, restricting the manufacture, sale, carry, and possession of particularly dangerous weapons prone to criminal misuse. Plaintiffs' "divide-and-conquer approach" (*United States v. Perez-Garcia*, 96 F.4th 1166, 1191 (9th Cir. 2024)) to rejecting individual analogues fails to comport with the methodology recently described by the Supreme Court in *United States v. Rahimi*, 144 S. Ct. 1889 (2024). There, the Court reiterated that a government does not

need to identify a "'dead ringer' or a 'historical twin'" to justify a modern law, but rather need only show that the law "comport[s] with the *principles* underlying the Second Amendment." *Id.* at 1898 (emphasis added) (quoting *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 30 (2022)).

Plaintiffs contend that they should prevail because there was "no historical tradition of prohibiting the[] possession" of billies at the founding (AB 3), but the Supreme Court has reaffirmed that a challenged regulation need not "precisely match its historical precursors" so long as it is "'analogous enough to pass constitutional muster.'" *Rahimi*, 144 S. Ct. at 1898 (quoting *Bruen*, 597 U.S. at 30).[1]  And California has demonstrated a tradition of regulating billies, dating back to the ratification of the Fourteenth Amendment, *see* OB 37-39, which are consistent with a broader pattern of regulation, rooted in pre-founding English and colonial tradition, restricting particularly dangerous impact and edged weapons used to commit crimes and threaten public safety, *see id.* at 32-43.  California's restrictions on billies are relevantly similar to historical analogues by imposing a comparable burden on the right to armed self-defense while promoting comparable public-safety goals.  In holding otherwise, the district court "misunderstood the

---

[1] "AB" refers to the answering brief, and "OB" refers to the opening brief.

methodology" of the Supreme Court's Second Amendment precedents. *Rahimi*,

144 S. Ct. at 1897. This Court should reverse.

## ARGUMENT

California Penal Code Section 22210's restrictions on the civilian acquisition

and possession of billies comport with the Second Amendment at both steps of the

Supreme Court's text-and-history standard. Under that standard, "when [a]

government regulates arms-bearing conduct," the government "bears the burden to

'justify its regulation'" by demonstrating that "the challenged regulation is

consistent with the principles that underpin our regulatory tradition." *United States*

*v. Rahimi*, 144 S. Ct. 1889, 1897-1898 (2024) (citations omitted); *accord Bruen*,

597 U.S. at 24 ("When the Second Amendment's plain text covers an individual's

conduct, the Constitution presumptively protects that conduct. The government

must then justify its regulation by demonstrating that it is consistent with the

Nation's historical tradition of firearm regulation.").

Overall, plaintiffs' facial challenge of those restrictions cannot succeed

because Section 22210 is constitutional in at least some applications. *See Rahimi*,

144 S. Ct. at 1898 (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

And on the merits, their claims fail at both stages of the text-and-history

framework. OB 20-52. Plaintiffs contend that billies are presumptively protected

by the Second Amendment simply because a billy is a weapon that can be held,

3

and they argue that the State failed to meet its burden simply because states did not enact identical restrictions on the possession of billies during the founding. Their approach to the Second Amendment analysis, like the district court's, is deeply flawed.

## I. PLAINTIFFS FAIL TO CLEAR THE HIGH BAR TO PREVAIL ON A FACIAL CHALLENGE TO CALIFORNIA'S RESTRICTIONS ON BILLIES

The district court did not properly assess plaintiffs' facial challenge to Section 22210's restrictions on billies, and instead improperly enjoined those restrictions in their entirety and in all applications. *See* OB 22 n.7. Plaintiffs do not respond to this argument, beyond simply repeating that they are raising "both an as-applied challenge and a facial challenge" to California's restrictions on billies. AB 1; *see also id.* at 5, 56. The distinction between plaintiffs' facial and as-applied claims is important. The Supreme Court recently emphasized the need to properly scrutinize facial challenges to statutes. *See Rahimi*, 144 S. Ct. at 1898-1899; *see also id.* at 1907 (Gorsuch, J., concurring) (agreeing that the challenger failed to "show 'no set of circumstances' exists in which th[e] law can be applied without violating the Second Amendment" (quoting *Salerno*, 481 U.S. at 745)).

In *Rahimi*, the Court faulted the Fifth Circuit for failing to "correctly apply [the Supreme Court's] precedents governing facial challenges." 144 S. Ct. at 1903. The Court explained that a facial challenge to a statute is the "'most difficult challenge to mount successfully,' because it requires [the challenger] to 'establish

that no set of circumstances exists under which the Act would be valid.'" *Id.* at 1898 (quoting *Salerno*, 481 U.S. at 745). The facial challenge to 18 U.S.C. § 922(g)(8) failed because one of its subsections—Section 922(g)(8)(C)(i)—was constitutional "as applied to the facts of [the challenger's] own case." *Id.* at 1898. Because Section 922(g)(8) was constitutional in that particular application, the Court did not decide "whether regulation under Section 922(g)(8)(C)(ii) is also permissible." *Id.* at 1898-1899.

Here, plaintiffs' challenge fails to clear the "very high bar" for facial claims. *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2397 (2024). Because the record confirms that Section 22210 is constitutional as applied to some weapons that qualify as billies—such as a collapsible ASP police baton (*see* 6-ER-977–978) or a crude, homemade club with nails (*see* OB 22 n.7), which are not commonly used by civilians for self-defense—the law cannot be unconstitutional on its face. *See Antonyuk v. Chiumento*, 89 F.4th 271, 362-363 (2d Cir. 2023) (holding that a law restricting the concealed carry of firearms in public parks "survive[d] a facial challenge" where the law was at least constitutional as applied to some parks), *cert. granted, vacated and remanded*, 2024 WL 3259671 (U.S. July 2, 2024).[2]

---

[2] Although the Supreme Court granted a petition for a writ of certiorari in *Antonyuk*, vacated the Second Circuit's decision, and remanded for further consideration in light of *Rahimi*, the order was not a reversal on the merits. *See*

Section 22210 also applies to several forms of conduct, including manufacture, importation, keeping for sale, giving, lending, and possession of a billy.  The district court's analysis focused on one regulated activity—the possession of a billy (*see, e.g.*, 1-ER-5)—but the court did not limit its relief to Section 22210's restrictions on possession; it enjoined all of the law's restrictions as applied to a billy.  1-ER-27.  Because Section 22210 would be constitutional with respect to manufacture and sales restrictions under even the district court's restrictive view of history, plaintiffs' facial challenge seeking relief with respect to all forms of conduct regulated by the statute cannot succeed.  *See* OB 39-41 (discussing historical analogues banning the manufacture and sale of certain weapons).

As for plaintiffs' as-applied challenge, they "want to purchase, own, possess and carry the same type of baton/billy that policemen are usually issued and an expandable baton for self-defense both in [their] home and outside [their] home." 7-ER-1209, 1211; *see also* AB 1 (referring to plaintiffs' desire to "purchase collapsible batons as well as any other batons typically issued to police officer[s]" and to "own them for self-defense and other lawful purposes in their home").  The merits of their as-applied claim is subject to the same legal standard as their facial

---

*Tyler v. Cain*, 533 U.S. 656, 666 n.6 (2001).  We reference the Second Circuit's *Antonyuk* opinion for its persuasive value.

claim. *See Hoye v. City of Oakland*, 653 F.3d 835, 857 (9th Cir. 2011). Both fail on the merits because Section 22210's restrictions on billies are constitutional under the Supreme Court's text-and-history standard. *See* OB 20-47; *infra* pp. 7-28.

## II. PLAINTIFFS HAVE FAILED TO ESTABLISH THAT SECTION 22210 REGULATES PRESUMPTIVELY PROTECTED CONDUCT

At the threshold stage of the Second Amendment inquiry, "a litigant invoking the Second Amendment must first establish that 'the Second Amendment's plain text covers an individual's conduct.'" *B&L Prods., Inc. v. Newsom*, 104 F.4th 108, 117 (9th Cir. 2024) (quoting *Bruen*, 597 U.S. at 24).[3] Thus, before proceeding to the historical stage of the Second Amendment analysis, plaintiffs must show that Section 22210's restrictions on billies burden presumptively protected conduct.

Plaintiffs have failed to show that the acquisition and possession of a billy—their "proposed course of conduct" (*Bruen*, 597 U.S. at 32; 7-ER-1201–1203)—is

---

[3] The majority opinion in *Rahimi* did not conduct a threshold-stage analysis. *See Rahimi*, 144 S. Ct. at 1907 (Gorsuch, J., concurring) (noting that no party questioned whether the challenged law "addresse[d] individual conduct covered by the text of the Second Amendment"). Nevertheless, the Court noted that the government bears the burden of justifying a law based on historical tradition only "*when* the government regulates arms-bearing conduct." *Id.* at 1897 (majority opinion) (emphasis added); *see id.* at 1928 (Jackson, J., concurring) (explaining that courts must, "first, determine whether 'the Second Amendment's plain text covers an individual's conduct'" (quoting *Bruen*, 597 U.S. at 24)).

presumptively protected by the Second Amendment.  *See Doe v. Bonta*, 101 F.4th 633, 639 (9th Cir. 2024) (the "initial and critical inquiry" is to define the relevant "'proposed course of conduct,'" which is "what the plaintiffs wanted to do and what the challenged law prevented them from doing"); *supra* pp. 5-6.[4]

## A.  Billies Are Not Presumptively Protected Because They Are Not in "Common Use for Self-Defense"

Plaintiffs argue that the threshold inquiry imposes a minimal burden on a party asserting a Second Amendment claim.  In plaintiffs' view, so long as a law regulates a weapon that can be borne—whether the weapon is a billy or a machine gun—"the Constitution 'presumptively guarantees' keeping and bearing" such a weapon, AB 7, automatically shifting the burden to the State to show that the law is historically justified.  The threshold inquiry is not so undemanding.  To be a presumptively protected "Arm," it is not sufficient for the regulated instrument to be a "'thing that a man . . . takes into his hands, or useth in wrath to cast at or strike

---

[4] A different threshold analysis would apply to restrictions on the manufacture, sale, and transfer of weapons.  The Second Amendment's plain text expressly protects only a right to "keep" and "bear" arms, so other conduct regulated by Section 22210 would be protected only as "ancillary rights" and only "to the extent necessary" to "'realiz[e] . . . the core right to possess a firearm for self-defense.'" *B&L Prods.*, 104 F.4th at 118 (quoting *Teixeira v. County of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) (en banc)); *see also McRorey v. Garland*, 99 F.4th 831, 838 (5th Cir. 2024) (while the right to "keep" and "bear" arms can implicate the right to purchase, "such an implication is not the same thing as being covered by the plain text of the amendment").

another'" or a "'[w]eapon[] of offense.'" AB 14 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 581 (2008)). The regulated weapon must also be "'in common use' today for self-defense." *Bruen*, 597 U.S. at 32; *see United States v. Alaniz*, 69 F.4th 1124, 1128 (9th Cir. 2023).[5]

To qualify for presumptive protection, the regulated weapon must have the "character" of a "self-defense weapon," *Heller*, 554 U.S. at 622, 629—one that is widely used in ordinary self-defense and is well-suited for that constitutionally protected purpose. OB 24-25; *see also Bevis v. City of Naperville* (*Bevis II*), 85 F.4th 1175, 1192 (7th Cir. 2023) ("Both Supreme Court decisions and historical sources indicate that the Arms the Second Amendment is talking about are weapons in common use for self-defense."), *cert. denied sub nom. Harrel v. Raoul*, 144 S. Ct. 2491 (2024); *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.* (*DSSA II*), __ F.4th __, 2024 WL 3406290, at *12 (3d Cir. July 15, 2024) (Roth, J., concurring) ("Limiting the scope of 'bearable arms' to those that

---

[5] Contrary to plaintiffs' claim (*see* AB 15), there is a similar limitation in First Amendment cases; for example, a plaintiff must show that a law challenged on First Amendment grounds burdens "*expressive* conduct" before the government must establish that the "expressive conduct falls outside of the category of protected speech." *Bruen*, 597 U.S. at 24 (emphasis added); *see also B&L Prods.*, 104 F.4th at 113-114 & n.11 (concluding that plaintiffs failed to establish that the challenged law "restrict[ed] any expressive conduct," and thus it did not "implicate the First Amendment").

are used for self-defense comports with the 'normal and ordinary' meaning of 'bear arms.'").[6]  In assessing "common use" for self-defense, courts should consider "objective evidence" of suitability and use of a weapon in self-defense, not the purported popularity of a weapon or the subjective views of its owners.  *Or. Firearms Fed'n v. Kotek*, 682 F. Supp. 3d 874, 918-922 (D. Or. 2023); *see also* OB 25-26.

Plaintiffs have not shown that the billy is commonly used today for ordinary self-defense.  *See* OB 18.  To the contrary, California courts have recognized that "a billy is not the sort of weapon 'typically possessed by law-abiding citizens for lawful purposes,'" and it thus "falls outside the protection of the Second Amendment."  *People v. Davis*, 214 Cal. App. 4th 1322, 1331-1333 (2013) (citing *People v. Grubb*, 63 Cal. 2d 614, 620 (1965), *superseded on other grounds by statute*).  Plaintiffs argue, without evidence, that billies are a "subset of clubs" that are "widely owned in almost every state in the Union" and "typically used for lawful purposes."  AB 29-30.  Plaintiffs further claim that "the record demonstrates that [billies] are possessed for self-defense," but cite excerpts from the record that do not support that assertion.  AB 30 (citing 6-ER-979 and 6-ER-988–989).  Those

---

[6] *Rahimi* further confirmed that self-defense, and not simply any lawful purpose, is the purpose protected by the Second Amendment.  *See* 144 S. Ct. at 1897 (noting that "the [Second Amendment] right secures for Americans a means of self-defense"); *see also* OB 23.

excerpts include a discussion of law enforcement use of batons (6-ER-979) and a conclusory assertion from plaintiffs' witness that "[a] civilian *could* use the ASP for self-defense" (6-ER-989 (emphasis added)). Plaintiffs also cite a law review comment stating without evidence that batons are "common and easy-to-use weapons for self-defense purposes," AB 30 n.25, despite record evidence that batons are not optimal for self-defense and require specialized training to use safely and effectively, *see* 6-ER-977–980.

To the extent plaintiffs attempt to rely on the use of certain batons in the performance of law enforcement and security duties (*see* AB 31), such use is not a "scenario that implicates 'ordinary self-defense needs,'" *Or. Firearms Fed'n*, 682 F. Supp. 3d at 920 (quoting *Bruen*, 597 U.S. at 60)), because law enforcement officers and security guards have "different duties than a civilian," *id.* (cleaned up); *see also United States v. Berger*, __ F. Supp. 3d __, 2024 WL 449247, at *9 (E.D. Pa. Feb. 6, 2024) (rejecting as "absurd" the argument that "the Second Amendment covers firearms that are commonly used by armies or law enforcement"); OB 27 n.11. Nor does evidence of a baton's "'traditional military utility'" or use in militia service (*see* AB 28 (citation omitted)) demonstrate that batons are in common use by civilians for "ordinary self-defense." *Bruen*, 597 U.S. at 60.

Plaintiffs also argue that Section 22210 effectively "prohibits the possession of sticks for self-defense," claiming that "even normal household goods such as

table legs, axe handles and baseball bats fall under California's billy club prohibition when possessed for self-defense." AB 3-4. But those types of "ordinarily harmless objects" are not billies; California law requires evidence that a defendant "would use the object for a dangerous, not harmless, purpose," depending on whether the particular "circumstances" of the case "demonstrate an immediate atmosphere of danger." *Grubb*, 63 Cal. 2d at 620-621. The defendant may rebut such evidence with evidence of "innocent usage." *Id.* at 621. It is far from clear that mere possession of an unmodified, ordinarily innocent object for self-defense—such as keeping a baseball bat in one's home for self-defense or behind a store counter in case of a robbery—would constitute illegal possession of a billy in violation of Section 22210. *Cf. People v. Hester*, 58 Cal. App. 5th 630, 644 (2020) (Wiley, J., concurring) (noting that Section 22210 was intended to "reach only morally blameworthy conduct" and that the "innocent usage" defense can "provide[] a solution to the problem of statutory overbreadth"). In any event, the Court should not invalidate Section 22210 in its entirety based on potentially overbroad applications, especially where plaintiffs do not seek to possess unmodified, ordinary objects for self-defense—they seek to possess police batons. *See supra* p. 5; *see also Rahimi*, 144 S. Ct. at 1903 (holding that a court commits "error" by "focus[ing] on hypothetical scenarios where [a law] might raise constitutional concerns" instead of "consider[ing] the circumstances in which [the

12

law is] most likely to be constitutional"); *Moody*, 144 S. Ct. at 2397 ("'Claims of

facial invalidity often rest on speculation' about the law's coverage and its future

enforcement." (citation omitted)).[7]

    Plaintiffs try to shift their burden to the State by arguing that the inquiry into

common use for self-defense occurs at the historical stage of the analysis.  AB 2,

17.  That does not accord with *Bruen* or this Court's precedents, which place this

inquiry at the threshold stage.  *See Bruen*, 597 U.S. at 32 (considering whether the

regulated weapons are "'in common use' today for self-defense" before proceeding

to the historical analysis); *Alaniz*, 69 F.4th at 1128 (same); *see also Duncan v.*

*Bonta*, 83 F.4th 803, 810 (9th Cir. 2023) (Bumatay, J., dissenting) (noting that one

of "the Second Amendment's 'textual elements'" is the term "Arms" and that

---

[7] Amici argue that Section 22210 is unconstitutionally vague.  Dkt. 20 at 29-30 (claiming that Section 22210 is "void for vagueness"); *cf.* Dkt. 24 at 15 (claiming the Section 22210 "violates the constitutional liberties interests of the California public").  Plaintiffs do not assert a vagueness claim against Section 22210, and this Court should not entertain arguments by amici raised for the first time on appeal.  *See Cruz v. Int'l Collection Corp.*, 673 F.3d 991, 999 (9th Cir. 2012).  In any event, if plaintiffs' or amicis' proffered interpretation of Section 22210 raises constitutional concerns, the Court should allow California courts to construe the statute to avoid those concerns in the first instance.  *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716-717 (1996) (noting that "federal courts have the power to refrain from hearing cases" in which the "resolution of a federal constitutional question might be obviated if the state courts were given the opportunity to interpret ambiguous state law" (citing *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941))).

"'Arms' refers to 'weapons "in common use" today for self-defense'" (quoting *Bruen*, 597 U.S. at 32)).[8]

*Bruen* determined that the weapon at issue in that case was in common use for self-defense before proceeding to the historical analysis. 597 U.S. at 32. *Bruen* referenced common use again in its historical analysis, concluding that historical affray laws that prohibited the carrying of "dangerous and unusual" weapons "to terrorize the people" could not justify contemporary public-carry restrictions on handguns because handguns "are indisputably in 'common use' for self-defense today." *Id.* at 47; *see also Heller*, 554 U.S. at 627. The fact that the Court referenced the handgun's common use in the context of examining a particular historical tradition (affray laws) does not mean that the Court situated the inquiry into common use for self-defense at the historical stage.

Plaintiffs also argue that the government has the burden to "rebut[]" the "presumptive protections of the Second Amendment"—that purportedly extend to all bearable weapons—by showing that the weapon is "not 'in common use' today for self-defense." AB 7-8 (quoting *United States v. Perez-Garcia*, 96 F.4th 1166,

---

[8] Plaintiffs acknowledge that *Alaniz* is "in tension with Plaintiffs' position," but dismiss *Alaniz*'s discussion of the *Bruen* framework as "dicta." AB 17-18. *Alaniz* is binding on this point because its description of the threshold inquiry tracked *Bruen*. *See United States v. McAdory*, 935 F.3d 838, 843-844 (9th Cir. 2019) (explaining that "well-reasoned dicta" is still binding). In any event, *Bruen* would still control this issue.

14

1180-1181 (9th Cir. 2024)). *Perez-Garcia*'s brief reference to the inquiry into common use for self-defense (*see* OB 23 n.8) was dicta; the Court did not need to decide whether the law regulated a weapon in common use for self-defense to determine that "the Second Amendment presumptively protects [the challenger's] proposed course of conduct" because the law restricted possession of "*any* firearm." *Perez-Garcia*, 96 F.4th at 1181. More importantly, plaintiffs' reading of *Perez-Garcia* conflicts with *Bruen*'s guidance on how to conduct the threshold analysis, which did not extend presumptive protections to a weapon before assessing whether the weapon is in common use for self-defense. *See Bruen*, 597 U.S. at 32. It also departs from the approach adopted by other courts. *See Bevis II*, 85 F.4th at 1194 (noting that "the plaintiffs . . . have the burden of showing that the weapons addressed in the pertinent legislation are Arms that ordinary people would keep at home for purposes of self-defense"). And regardless of who bears the burden, the record in this case reflects that billies are specialized compliance tools that are not in common use for self-defense and are thus not presumptively protected. *See, e.g.*, 6-ER-975, 977–980, 1049–1070.

**B. Billies Are Not Presumptively Protected Because They Are "Dangerous and Unusual"**

Billies are also not presumptively protected "Arms" because they are "dangerous and unusual" weapons, which fall outside the scope of the Second Amendment. *See* OB 27-31. Billies are particularly dangerous weapons, capable

15

of serious bodily injury or even death, and are highly susceptible to criminal

misuse in interpersonal violence and civil unrest.  *See id.* at 29-31.

Relying on Justice Alito's concurring opinion in *Caetano v. Massachusetts*,

577 U.S. 411, 418 (2010), plaintiffs argue that billies are not "*both* dangerous *and*

unusual," which they argue is required to fall outside the scope of the Second

Amendment.  AB 29; *see also id.* at 32.  The view that this phrase imposes a two-

part test has never been adopted by a majority of the Supreme Court, and it is

inconsistent with the leading treatise cited in *Heller* and *Rahimi* and other

historical sources.  *See* 4 Blackstone, *Commentaries on the Laws of England* 148

(1769) (referring to "dangerous *or* unusual weapons" (emphasis added)); Sharp,

*Tracts, Concerning the Ancient and Only True Legal Means of National Defence,*

*by a Free Militia* 17-18 (ed. 1782) (identifying certain dangerous weapons that

may be "restrain[ed]" without reference to numerical prevalence).  Plaintiffs also

rely on *United States v. Henry*, 688 F.3d 637 (9th Cir. 2012), which held that

machine guns are "dangerous and unusual" weapons.  AB 29 (quoting *Henry*, 688

F.3d at 640).  Though that decision considered both the dangerousness and

prevalence of machine guns, it did not impose a rigid two-part test.  *Henry*, 688

F.3d at 640.

"Dangerous and unusual" refers to especially dangerous weapons.  *See* OB 27

n.12.  To fall within that category, the weapon need not be numerically rare.  *See*

16

*Ocean State Tactical, LLC v. Rhode Island*, 95 F.4th 38, 50 (1st Cir. 2024) (noting that the Supreme Court "has not held that states may permissibly regulate only unusual weapons"). Governments often regulate weapons only after they become sufficiently prevalent in society that they pose a significant danger to the public. *See McCullen v. Coakley*, 573 U.S. 464, 481 (2014) (noting that governments do not "regulate for problems that do not exist"); *cf. Rahimi*, 144 S. Ct. at 1925 (Barrett, J., concurring) (noting that the "assum[ption] that founding-era legislatures maximally exercised their power to regulate, thereby adopting a 'use it or lose it' view of legislative authority," is "flawed"). Indeed, history shows that particularly dangerous weapons have often been regulated only after their ownership and use had already become widespread. Henry VIII prohibited crossbows (*see* OB 33-34) precisely because of concerns arising from their increased popularity and use. *See* Schwoerer, *Gun Culture in Early Modern England* 55 (2016) (noting the "wanton pleasure that men now have in using of crossbows"). And Bowie knives were regulated (*see* OB 40-41) after they "proliferated in civil society." *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.* (*DSSA I*), 664 F. Supp. 3d 584, 602 (D. Del. 2023).

Plaintiffs claim that billies cannot be "legally 'dangerous'" because they are "less dangerous than handguns" that are constitutionally protected. AB 32. However, *Heller* did not hold that any less-than-lethal weapon is off-limits from

17

regulation simply because more-lethal handguns may be protected.  Even though "it is often a gun—not a billy, sap, or blackjack—that is the weapon of choice in most violent crimes," that fact does not mean that "the kind of weapons known as billies, blackjacks, and saps" are not "also instruments which are 'ordinarily used for criminal and unlawful purposes.'"  *See Davis*, 214 Cal. App. 4th at 1333 (quoting *Grubb*, 63 Cal. 2d at 620).  Indeed, throughout American history, governments regulated concealable impact and edged weapons even as they regulated certain firearms as they became more lethal and widespread.  *See, e.g.*, C. B. Pierce, *Charter and Ordinances of the City of Leavenworth, with an Appendix* 45 (1863), § 23 (banning the concealed carry of pistols and billies).  Plaintiffs also argue that billies are not unusual because they are legal in other jurisdictions and are used by law enforcement for official duties.  AB 29, 31.  But as discussed, that does not establish that they are typically possessed by civilians for self-defense.  *See supra* p. 11.

As with the inquiry into common use for self-defense, plaintiffs try to move the "dangerous and unusual" analysis to the historical stage, where the State bears the burden of proof.  AB 31.  That is not correct.  The Supreme Court has considered "the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons'" in determining what "sorts of weapons [are] protected," *Heller*, 554 U.S. at 627, not whether a law is consistent with the Nation's regulatory

tradition.  *See* OB 28 n.13.  Other courts have conducted the "dangerous and unusual" analysis at the threshold stage.  *See, e.g.*, *Nat'l Ass'n for Gun Rights v. Lamont*, 685 F. Supp. 3d 63, 90-91 (D. Conn. 2023); *Or. Firearms Fed'n*, 682 F. Supp. 3d at 922; *see also Perez-Garcia*, 96 F.4th at 1180 (noting that the "Second Amendment may not protect [an individual's] right to bear or keep 'dangerous and unusual weapons'").

Finally, plaintiffs claim that billies are protected by the Second Amendment based on decisions of the Supreme Courts of Connecticut and Oregon.  *See* AB 32-33 (citing *State v. DeCiccio*, 315 Conn. 79 (2014), *State v. Kessler*, 289 Or. 359 (1980), and *State v. Blocker*, 291 Or. 255 (1981), *overruled on other grounds by State v. Christian*, 354 Or. 22, 40 (2013)).  Those cases are readily distinguishable, and none evaluated billy restrictions under the United States Supreme Court's text-and-history standard.  In *DeCiccio*, the Connecticut Supreme Court held that police batons are protected by the Second Amendment based on law-enforcement use.  315 Conn. at 134.  That decision did not cite any evidence demonstrating that police batons are commonly used by civilians for self-defense, but instead cited the "widespread acceptance of batons within the law enforcement community."  *Id.* at 133.  The use of police batons by law enforcement is not evidence that they are "not so dangerous or unusual as to fall outside" the presumptive protection of the Second Amendment.  *Id.*; *see also supra* p. 11.

19

In *Kessler*, the Oregon Supreme Court held that a prohibition on the civilian possession of a billy inside the home violated the Oregon Constitution. 289 Or. at 372. The court later extended that holding to protect the right to carry billies in public. *Blocker*, 291 Or. 255. The Oregon cases are inapposite because the Oregon Constitution's right to bear arms is different from the Second Amendment. The Oregon Constitution provides that "[t]he people shall have the right to bear arms for the defence [sic] of themselves, *and the State*." *Kessler*, 289 Or. at 361 (quoting Or. Const. art. I, § 27) (emphasis added). The Second Amendment, by contrast, protects an individual right to keep and bear arms for self-defense. *See* OB 23. *Kessler* also did not examine whether billies are in common use for self-defense or are "dangerous and unusual." *See* 289 Or. at 371-372.

## III. CALIFORNIA'S RESTRICTIONS ON BILLIES ARE CONSISTENT WITH THE PRINCIPLES UNDERPINNING HISTORICAL WEAPONS REGULATIONS

Even if plaintiffs' proposed course of conduct were presumptively protected by the Second Amendment, the State has demonstrated that Section 22210's restrictions on the civilian acquisition and possession of a billy are consistent with the historical scope of the Second Amendment. *See* OB 31-47. From pre-founding England through the eighteenth and nineteenth centuries in the United States, governments have targeted specific weapons for heightened regulation that were considered at the time to be especially dangerous or particularly susceptible to

20

criminal misuse, including crossbows, billies, slungshots, and Bowie knives, while leaving other instruments and weapons available for self-defense. *Id.* at 31-43.

## A. *Rahimi* Offers Guidance on the Historical Analysis in Second Amendment Cases

In *Rahimi*, the Supreme Court provided additional guidance on the Second Amendment framework first announced in *Bruen*, 597 U.S. 1. *Rahimi*, 144 S. Ct. 1889. In an 8-1 decision, the Court rejected a facial challenge under the Second Amendment to 18 U.S.C. § 922(g)(8), which prohibits individuals subject to certain domestic violence restraining orders from possessing a firearm. 144 S. Ct. at 1898. The Fifth Circuit had analyzed the statute under *Bruen* and held that the statute violates the Second Amendment because it "does not fit within our tradition of firearm regulation." *Id.* at 1896. The Supreme Court reversed. *Id.* at 1903. The Court explained that "some courts have misunderstood the methodology of our recent Second Amendment cases," noting that those "precedents were not meant to suggest a law trapped in amber." *Id.* at 1897. The Court explained that the history-and-tradition approach first articulated in *Bruen* "involves considering whether the challenged regulation is consistent with the *principles* that underpin our regulatory tradition." *Id.* at 1898 (emphasis added). To show that a modern law is consistent with those principles, the government need not identify "a 'dead ringer' or a 'historical twin.'" *Id.* Instead, the government need only show that

"the new law is 'relevantly similar' to laws that our tradition is understood to permit." *Id.*

Applying that analytical framework to Section 922(g)(8), the Court identified "two distinct legal regimes" relevant to its analysis: surety laws and prohibitions on "going armed" in public. *Id.* at 1899-1901. It then distilled from those two regimes the Second Amendment principle applicable in that case. "Taken together," the Court explained, those laws "confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id.* at 1901. The Court acknowledged that section 922(g)(8) is "by no means identical" to the surety and going armed laws, but recognized that "it does not need to be" because the statute "fits neatly within the tradition the surety and going armed laws represent." *Id.* Ultimately, the Court had "no trouble" concluding that section 922(g)(8) falls within this regulatory tradition, which allows the government to "disarm individuals who present a credible threat to the physical safety of others." *Id.* at 1902.

### B. California's Restrictions on Billies Accord with the Historical Tradition of Regulating Particularly Dangerous Weapons

The historical record assembled by the State confirms the principle that governments can regulate (and outright prohibit) particularly dangerous weapons that imperil public safety, so long as alternative weapons remain available for self-defense. *See* OB 31-47. Section 22210's restrictions on billies are "consistent

22

with the principles that underpin our regulatory tradition" because they are "relevantly similar" to historical weapons restrictions, *Rahimi*, 144 S. Ct. at 1898—they "impose a comparable burden on the right of armed self-defense" that "is comparably justified," *Bruen*, 597 U.S. at 29.

Before the founding, the English Bill of Rights recognized government authority to restrict particular types of weapons, as the Crown had banned the possession of certain weapons, like pocket pistols and crossbows, to protect public safety. *See* OB 33-34. Plaintiffs argue that these restrictions were aimed at preserving longbow proficiency to "aid in the national defense." AB 43. But the "express rationale" (*id.*) for that prohibition was not limited to that goal; the act referred to the use of crossbows and handguns in "detestable and shameful murders, robberies, felonies, riot, and rout." 33 Hen. 8, ch. 6, § 1 (1541) (cleaned up); *see also* OB 33-34. As noted in *Rahimi*, the English Bill of Rights recognized the "principle that arms-bearing was constrained 'by Law.'" 144 S. Ct. at 1899. Plaintiffs suggest that the Second Amendment did not preserve government's authority to ban the possession of certain weapons because "by the Colonial Era, America had no prohibitions on the ownership of any arm." AB 42. But colonial governments did restrict certain particularly dangerous weapons, like East New Jersey's prohibition on the concealed carry of pocket pistols, daggers, and dirks. OB 35. And at least one colonial government banned trap guns, firearms

23

configured in certain ways to fire remotely when a trap is sprung, *id.* at 34 n.16, which is a "restriction on the possession of an arm during the Colonial Era," AB 50.

After the founding, in the mid-eighteenth century, states began to impose more restrictions on particularly dangerous weapons, including bans on the manufacture, sale, and possession of slungshots and Bowie knives. OB 39-41.[9] Beginning in 1862, before the ratification of the Fourteenth Amendment, governments restricted billies shortly after they first appeared and began to be associated with crime in civilian hands. *Id.* at 37-38. "Taken together," these dangerous weapons laws reflect the principle that governments can target specific weapons for heightened regulation, including banning the sale, manufacture, carry, and even possession of those weapons. *See Rahimi*, 144 S. Ct. at 1901.

Here, Section 22210's restrictions on billies are "relevantly similar" to the range of historical restrictions on particularly dangerous weapons, including billies, slungshots, and Bowie knives, enacted from the pre-founding period to the present day. *See* OB 43-47. As with Section 22210, those historical laws targeted particular weapons to reduce the use of those weapons in interpersonal violence

---

[9] Plaintiffs argue that the 1837 Georgia law restricting Bowie knives, along with other concealable weapons, allowed for the open carry of a Bowie knife (AB 39-40), but plaintiffs ignore the law's separate prohibition on the sale of the listed weapons. *See* 1837 Ga. Acts 90, § 1.

and other crime. *Id.* at 46-47. Section 22210 promotes that same objective by imposing a comparable burden on the right to armed self-defense. *See id.* at 44-46. The challenged restrictions target the civilian use and possession of a billy, which is not a "self-defense weapon." *Heller*, 554 U.S. at 629. Those restrictions do not prohibit the use of a range of objects, instruments, and other weapons for lawful self-defense. *See* OB 45.

Plaintiffs' argument that Section 22210's burden exceeds the burden imposed by the historical laws (*see* AB 55) is incompatible with *Rahimi*'s discussion of how to conduct the historical analysis. *See Rahimi*, 144 S. Ct. at 1904 (Sotomayor, J., concurring) (comparing the dissent's "exacting" historical inquiry to "a too-sensitive alarm that sounds whenever a regulation did not exist in an essentially identical form at the founding"). In *Rahimi*, the Court held that surety laws imposed a comparable burden to a statute disarming certain individuals, even though surety laws allowed the individual posting sureties to continue to keep and bear arms. 144 S. Ct. at 1901-1902; *see also id.* at 1940 (Thomas, J., dissenting) (noting that Section 922(g)(8) is "in an entirely different stratum from surety laws" because "[s]urety laws preserve the Second Amendment right, whereas § 922(g)(8) strips an individual of that right"). Under the approach discussed in *Rahimi*, Section 22210 imposes a comparable burden on the right to armed self-defense,

even if their respective burdens on that right were not "identical." *Rahimi*, 144 S. Ct. at 1901.

Plaintiffs' principal objection to the States' analogues is that "California has failed to identify a ban on the *possession* of any weapons" at the founding. AB 51; *see also, e.g.*, *id.* at 8. They argue that the laws regulated "weapons other than billies" (*id.* at 54) in ways other than banning possession (*id.* at 36). Plaintiffs' arguments "miss[] the forest for the trees." *Perez-Garcia*, 96 F.4th at 1191.[10] The State need not find a "'dead ringer' or a 'historical twin'" to justify a law under the Second Amendment. 144 S. Ct. at 1898 (quoting *Bruen*, 597 U.S. at 30). Plaintiffs' approach, if valid, would mean that no ban on the possession of an Arm would be consistent with historical tradition, even though the Supreme Court has already indicated that certain weapons "may be banned." *Heller*, 554 U.S. at 627.

The Supreme Court has already explained that historical prohibitions on "the carrying of 'dangerous and unusual weapons'" "fairly support[]" limitations "on the right to keep and [not just to] carry" weapons. *Heller*, 554 U.S. at 627. And in *Rahimi*, the Court credited "going armed" laws that prohibited the carrying of

---

[10] Plaintiffs rely on *United States v. Duarte*, 101 F.4th 657 (9th Cir. 2024), in support of their argument that Section 22210 is not relevantly similar to historical analogues. *See* AB 54 (citing *Duarte*, 101 F.4th at 677). This Court has since granted rehearing en banc in that case and vacated the panel opinion. *See United States v. Duarte*, 2024 WL 3443151, at *1 (9th Cir. July 17, 2024).

26

"dangerous or unusual weapons" in justifying Section 922(g)(8)'s ban on the *possession* of firearms. 144 S. Ct. at 1901 (quoting 4 Blackstone 149).[11] Even if the State could not point to a ban on the possession of a billy or baton enacted at the founding (*see* AB 8), historical regulations "reveal a principle" to guide future regulations, "not a mold" constraining governments to enact only those restrictions previously enacted in the past. *Rahimi*, 144 S. Ct. at 1925 (Barrett, J., concurring).

Plaintiffs also argue that the only "relevant time period" for the historical analysis is "the Founding, centering on 1791." AB 10.[12] According to plaintiffs, laws enacted during Reconstruction—when cities and states began restricting the carrying of billies—came too late because 1791 is the "focal point for constitutional analysis." *Id.* at 36-38. Contrary to plaintiffs' claim, however, the "ongoing scholarly debate" (*Bruen*, 597 U.S. at 37) about laws enacted around the time of the Fourteenth Amendment's ratification has not "been laid to rest."

---

[11] Even though the Supreme Court rejected certain historical carry restrictions as "insufficiently analogous" in *Heller* and *Bruen* (AB 22), such laws can suffice in other cases addressing laws that impose a lesser burden on the right to armed self-defense. In *Rahimi*, the Court credited surety and "going armed" laws that were held to be insufficient in *Bruen* because, "[u]nlike the regulation struck down in *Bruen*, Section 922(g)(8) does not broadly restrict arms use by the public generally." 144 S. Ct. at 1901.

[12] In support of this assertion, plaintiffs cite an online article written by a sympathetic litigator. AB 10 (citing Smith, *'Not All History Is Created Equal': In the Post-*Bruen *World, the Critical Period for Historical Analogues Is When the Second Amendment Was Ratified in 1791, and Not 1868* (Oct. 1, 2022), https://tinyurl.com/37ym87d6).

27

AB 38. *Bruen* expressly declined to resolve that issue, 597 U.S. at 38, as did *Rahimi*, 144 S. Ct. at 1898 n.1. But *Rahimi* relied on surety laws enacted in the mid-nineteenth century, long after the ratification of the Second Amendment, to define the relevant principle. *See id.* at 1900 (citing *Bruen*, 597 U.S. at 56 & n.23, which gathered laws enacted between 1838 and 1868); *id.* at 1910 (Kavanaugh, J., concurring) (explaining that Second Amendment analysis properly encompasses "pre-ratification and post-ratification history"); *cf. Consumer Fin. Prot. Bureau v. Cmty. Fin. Servs. Ass'n of Am.*, 601 U.S. 416, 445 (2024) (Kagan, J., concurring) (considering "a continuing tradition" "[t]hroughout our history" in addition to "founding-era history").

*Rahimi* also rebuts plaintiffs' argument that local and territorial laws should be "disregarded." AB 12-13. *Rahimi* relied on surety laws from two territories and the District of Columbia. *See* 144 S. Ct. at 1900 (citing *Bruen*, 597 U.S. at 56 & n.23, which included a 1838 Wisconsin territorial law, 1851 Minnesota territorial law, and 1857 District of Columbia law).

Properly evaluated under *Rahimi* and *Bruen*, Section 22210's restrictions on billies are "relevantly similar" to historical laws restricting the manufacture, sale, carry, and possession of particularly dangerous weapons.

## CONCLUSION

The judgment of the district court should be reversed, and this Court should remand for entry of judgment in favor of the Attorney General.

Dated:  July 29, 2024                    Respectfully submitted,


    *s/ John D. Echeverria*
_____

ROB BONTA
*Attorney General of California*
THOMAS S. PATTERSON
*Senior Assistant Attorney General*
R. MATTHEW WISE
*Supervising Deputy Attorney General*
CHRISTINA R.B. LÓPEZ
KATRINA UYEHARA
*Deputy Attorneys General*
JOHN D. ECHEVERRIA
*Supervising Deputy Attorney General*
*Attorneys for Defendant and Appellant*

29

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 24-1039

I am the attorney or self-represented party.

**This brief contains** | 6,912 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    ☐ it is a joint brief submitted by separately represented parties.
    ☐ a party or parties are filing a single brief in response to multiple briefs.
    ☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [            ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ John D. Echeverria | **Date** | July 29, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                          30                          *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

I certify that on July 29, 2024, I electronically filed the foregoing document with the Clerk of the Court of the United States Court of Appeals for the Ninth Circuit by using the court's Appellate Case Management System (ACMS). I certify that all other participants in this case are registered ACMS users and that service will be accomplished by the Appellate Case Management System.

Dated: July 29, 2024          *s/ John D. Echeverria*